[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 413.]

**THE STATE OF OHIO, APPELLEE, *v*. GUMM, APPELLANT.**

**[Cite as *State v. Gumm*, 1995-Ohio-24.]**

*Criminal law—Aggravated murder—Death penalty upheld, when—Evidence— What the prosecutor may comment upon at penalty stage of capital trial.*

Subject to applicable Rules of Evidence, and pursuant to R.C. 2929.03(D)(1) and (2), counsel for the state at the penalty stage of a capital trial may introduce and comment upon (1) any evidence raised at trial that is relevant to the aggravating circumstances specified in the indictment of which the defendant was found guilty, (2) any other testimony or evidence relevant to the nature and circumstances of the aggravating circumstances specified in the indictment of which the defendant was found guilty, (3) evidence rebutting the existence of any statutorily defined or other mitigating factors first asserted by the defendant, (4) the presentence investigation report, where one is requested by the defendant, and (5) the mental examination report, where one is requested by the defendant. Further, counsel for the state may comment upon the defendant's unsworn statement, if any. (R.C. 2929.03[D], construed; State v. DePew [1988], 38 Ohio St.3d 275, 528 N.E.2d 542, affirmed and followed.)

———————————

(No. 94-756—Submitted June 7, 1995—Decided August 30, 1995.)

APPEAL from the Court of Appeals for Hamilton County, No. C-920907.

———————————

{¶ 1} Early on the morning of May 12, 1992, the bludgeoned body of ten-year-old Aaron Raines was found by police in the basement of an abandoned building in the lower Price Hill section of Cincinnati. Defendant-appellant, Darryl

"Junior" Gumm, was subsequently convicted of the crimes of aggravated murder, attempted rape and kidnapping of Aaron Raines, and sentenced to death.

{¶ 2} At 11:00 p.m. on May 11, 1992, Aaron Raines's family reported Aaron as missing to Cincinnati police. An extensive neighborhood search took place, culminating in the discovery of Aaron's body in the basement of an abandoned building adjacent to a neighborhood park where Aaron had previously been playing.

{¶ 3} Several weeks later Betty Gumm, a friend of the Raines family and defendant's sister through adoption, learned that her brother Darryl had been in the neighborhood on the day of Aaron's murder. Betty knew that her brother was acquainted with Aaron, and was familiar with the abandoned buildings where Aaron's body was found, having stripped copper out of them many times at night. Betty called the local "Crime Stoppers" number to report her information.

{¶ 4} On July 24, 1992, Cincinnati police interviewed appellant at his job site, a tobacco farm in Brooksville, Kentucky. At that time, Gumm told police he hadn't been in Cincinnati since March 1992, and indicated his desire to cooperate with police. On July 27 Cincinnati police returned to Brooksville to talk to Gumm again, and Gumm accompanied them back to Cincinnati, ostensibly to clear himself of any wrongdoing. After extensive questioning in which he changed his statement several times, Gumm eventually confessed involvement in the murder of Aaron Raines.

{¶ 5} Gumm's statement disclosed that he and one Michael Bies, a Kentucky acquaintance, were driven to Cincinnati on May 11 by acquaintances and dropped off around noon. Gumm told police that he and Bies went to a bar to drink beer, and later went to the Price Hill park adjacent to two abandoned buildings, where they encountered Aaron. Gumm and Bies were observed at approximately 7:00 p.m. sitting on a bench in the park in which Aaron last played. Gumm admitted that he lured Aaron into the abandoned buildings for sexual purposes by telling him

he would be paid $10 to help strip copper from the buildings. According to Gumm, after the three entered the first building and crossed over a walkway into the second building, Bies asked Aaron to perform oral sex for money. When Aaron refused, Gumm claimed that Bies punched Aaron several times, picked him up and carried him downstairs to the basement. According to Gumm, Bies there hit Aaron several additional times, once on the head with a "two by four." After that, Gumm stated that he and Bies fled the scene. Gumm claims that he himself did not hit Aaron at all, but conceded that he might have stepped on his body as he was attempting to flee from the basement.

{¶ 6} When police found Aaron's body at the basement crime scene, they noticed several objects around the body that contained blood and hairs consistent with the victim's. These objects included a chunk of concrete, a pipe, pieces of wood, and twine found wrapped around Aaron's neck.

{¶ 7} Amy Martin, M.D., a former deputy coroner of Hamilton County, examined Aaron's body at the crime scene and conducted the post-mortem exam at the coroner's office. Dr. Martin testified that Aaron sustained twenty-one lacerations to the back of his head, representing twenty-one separate blows from an object, and that some of these wounds manifested lines that matched the threading on the pipe found next to the body. Five of Aaron's ribs were broken, which Dr. Martin found unusual for a boy of his age, since such bones are usually flexible. Dr. Martin opined that "something like a kicking or stomping" would be the type of force necessary to break a young boy's ribs. Dr. Martin further testified that the left side of Aaron's face was completely crushed in a manner consistent with a blow from the chunk of concrete found lying next to the body. Several "chevron pattern" bruises consistent with the tread of a Nike gym shoe were found on several areas of Aaron's body. Gumm had told police that he thought Bies had been wearing L.A. Gear gym shoes, and acknowledged that he had thrown his own shoes away.

**{¶ 8}** Dr. Martin testified that Aaron also sustained a broken jaw, chipped teeth and cut lips, a deep laceration and bone chip on the underside of his jaw, compression wounds and hemorrhages in the eyes probably caused by compression of twine wrapped around his neck, and pattern bruises typical of injuries caused by being struck with a stick or rod.

**{¶ 9}** Dr. Martin found no evidence of any defensive wounds on Aaron's body, and opined that the absence of defensive wounds was consistent with Aaron having been held or restrained while his injuries were being inflicted. Dr. Martin determined that the cause of death was a combination of blunt impacts to the head, chest and abdomen, as well as blunt injury to the neck.

**{¶ 10}** Gumm was indicted by the Hamilton County Grand Jury on one count of aggravated murder with death penalty specifications based on violations of R.C. 2929.04(A)(3) (offense committed to escape detection for attempted rape or kidnapping) and R.C. 2929.04(A)(7) (felony-murder based on underlying felonies of kidnapping and attempted rape). Gumm was also indicted on separate counts of attempted rape (R.C. 2923.02) and kidnapping (R.C. 2905.01). At the conclusion of the guilt phase, the jury found Gumm guilty on all counts and specifications.

**{¶ 11}** At the mitigation phase of the trial Gumm called one witness, his sister Karen Ridenour. He presented no statement himself. The jury found the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt and recommended that Gumm receive the death penalty. The trial court merged the specifications and imposed the death sentence for the aggravated murder count. The court further imposed consecutive terms of imprisonment upon Gumm's convictions for attempted rape and kidnapping.

**{¶ 12}** Upon appeal, the First District Court of Appeals affirmed the convictions and sentence of death.

———————————

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Christian J. Schaefer*, Assistant Prosecuting Attorney, for appellee.

*H. Fred Hoefle* and *David J. Boyd*, for appellant.

———————————

**MOYER, C.J.**

{¶ 13} Appellant has raised twenty-two propositions of law. We have reviewed each and, for the reasons stated below, we find that none justifies reversal of appellant's conviction of the crimes of aggravated murder, kidnapping and attempted rape of ten-year-old Aaron Raines. In addition, we have fulfilled our responsibilities to independently review the record, weigh the mitigating factors against the aggravating circumstances, and examine the appropriateness and proportionality of a sentence of death in this case. Upon full review of the record we affirm appellant's convictions and death sentence.

I

Allegation of Improper Consideration of "Nature and Circumstances" Evidence

{¶ 14} Gumm argues that his death sentence should be reversed based on prosecutorial misconduct. Specifically Gumm complains of the following statements made by prosecutors in the penalty phase closing argument: "What are the aggravating circumstances in this case? All facts and all the circumstances and all the evidence that surrounded that episode back on May the 11th of this year. The age of the victim. How he died. Where he died. Why he died. The motive that was in the minds of the two men that took him into the building. How he was murdered. How he was left. All of these factors should be put on that scale and weighed by you, and on the other side of that scale you should put whatever mitigating factors you heard in the case today."

{¶ 15} Later, in rebuttal, the prosecution continued: "And I'm going to speak a little bit about the aggravating circumstances at this point. He was ten years old. He weighed eighty-five pounds, and according to the defendant, he barely came

above his waist.  We know he was afraid of high places.  He was absolutely terrified of the dark. *** "And can you think of anything more terrifying for a boy who is afraid of the dark, after all that's happened to him, than to be forcibly taken down into that pitch black basement? "Just imagine what was going through his mind. How many times did he beg them to stop?  How many times did he say a little prayer for help?  And down in the basement we know it wasn't quick, and it wasn't easy either.

{¶ 16} "How long did it take before he lost consciousness?  And when he did, what were his last thoughts?  Was he still asking this man to set him free?  Or at that point was he begging to just let him die?  Those are the aggravating circumstances on this case."

{¶ 17} This court is thus once again faced with contentions of error in a capital case based on lower courts having considered, or allowing the jury to consider, or allowing the prosecutor to argue, or including in its sentencing opinion, "nonstatutory aggravating circumstances" in connection with the determination of whether a sentence of death should be imposed.  In light of the inclusion of such an argument in nearly every capital case recently presented to this court, we find it appropriate to review the law, both constitutional and statutory, which governs the resolution of such contentions.

A

*Constitutional Considerations*

{¶ 18} Proof of an "aggravating circumstance" is constitutionally required by the Eighth Amendment to the United States Constitution before a convicted murderer may be sentenced to death. *Tuilaepa v. California* (1994), 512 U.S. S.Ct. 2630, 2634-2635, 129 L.Ed.2d 750, 759.  Statutes defining felony-murder as an aggravating circumstance do not violate these Eighth Amendment standards, at least as to a defendant who is found to have himself killed, attempted to kill, or intended to kill,  or who possesses a culpable mental state of reckless indifference

to human life. *Enmund v. Florida* (1982), 458 U.S. 782, 102 S. Ct. 3368, 73 L. Ed. 2d1140; *Tison v. Arizona* (1987), 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127.

{¶ 19} In Ohio, a capital defendant is tried and sentenced in a two-stage process. During the first phase (commonly referred to as the "guilt phase") the state must prove the defendant guilty beyond a reasonable doubt of the crime of aggravated murder, and must also prove the defendant guilty of at least one statutorily defined "aggravating circumstance" as set forth in R.C. 2929.04(A)(1) through (8). At the point in time at which the factfinder (either a jury or three-judge panel) finds the defendant guilty of both aggravated murder and an R.C. 2929.04(A) specification, the defendant has become "death-eligible," and a second phase of the proceedings (the "mitigation" or "penalty" or "sentencing" or "selection" phase) begins. R.C. 2929.03(C)(2) and (D)(1).

{¶ 20} During this latter phase, the Eighth Amendment does not preclude consideration of the facts and circumstances surrounding the murder. To the contrary, the United States Supreme Court has consistently recognized that the determination as to the imposition of a death sentence should hinge on "an *individualized* determination" based on "the character of the individual *and the circumstances of the crime*." (Emphasis added in part.) *Zant v. Stephens* (1983), 462 U.S. 862, 879, 103 S.Ct. 2733, 2744, 77 L.Ed.2d 235, 251. See, also, *Woodson v. North Carolina* (1976), 428 U.S. 280, 304, 96 S. Ct. 2978, 2991, 49 L. Ed. 2d 944, 961 ("consideration of *** the circumstances of the particular offense [is] a *constitutionally indispensable* part of the process of inflicting the penalty of death." [Emphasis added.]). See, also, *Tuilaepa*, *supra*, 512 U.S. at , 114 S.Ct. at 2637, 129 L.Ed.2d at 762 ("*The circumstances of the crime are a traditional subject for consideration by the sentencer*, and an instruction to consider the circumstances is neither vague nor otherwise improper under our Eighth Amendment jurisprudence" [emphasis added].). As a matter of Eighth Amendment requirements, "'[o]nce the jury finds that the defendant falls within the legislatively defined category of

persons eligible for the death penalty, \*\*\* the jury then is free to consider a myriad of factors to determine whether death is the appropriate punishment' [and] may be given 'unbridled discretion in determining whether the death penalty should be imposed \* \* \*.'" *Id.* at , 114 S.Ct. at, 2639, 129 L.Ed.2d at 764, quoting *California v. Ramos* (1983), 463 U.S. 992, 1008, S.Ct. 3446, 3457, 77 L.Ed.2d 1171, 1185, and *Zant*, *supra*, 426 U.S. at 875, 103 S.Ct. at 2742, 77 L.Ed.2d at 243.

{¶ 21} Pursuant to this precedent, we reject Gumm's contention that he was denied rights guaranteed him by the United States Constitution in that the prosecutor argued and the jury was permitted to consider the nature and circumstances of the murder of Aaron Raines in determining whether to recommend a sentence of death.

B

*Statutory Considerations*

{¶ 22} Our conclusion that consideration of the nature and circumstances surrounding a capital defendant's crime is permissible under the United States Constitution does not conclude our inquiry, in that the imposition of a death sentence in Ohio is further governed by statute.

{¶ 23} Our analysis must necessarily begin with the language of the governing statutes. In making the determination whether a death sentence should, in fact, be imposed, "[t]he court, and the trial jury if the offender was tried by a jury, [1] *shall consider \*\*\* any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing or to any factors in mitigation of the imposition of the sentence of death, [2] shall hear testimony and other evidence that is relevant to the nature and circumstances of the aggravating circumstances the offender was found guilty of committing*, the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, and any other factors in mitigation of the imposition of the sentence of death, and [3] shall hear the statement, if any, of the offender, and *the arguments, if any, of*

*counsel for the defense and prosecution, that are relevant to the penalty that should be imposed on the offender*." (Emphasis added.) R.C. 2929.03(D)(1). Similarly, R.C. 2929.03(D)(2) requires a trial jury to base its determination as to "whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case" upon "*consideration of the relevant evidence raised at trial*, the testimony, *other evidence*, statement of the offender, arguments of counsel, and, if applicable, [pre-sentence investigation or mental examination] reports submitted pursuant to division (D)(1) of [R.C. 2929.03]. " (Emphasis added.)

{¶ 24} These statutes thus expressly require the jury to "consider" both relevant trial evidence as well as "other" evidence relevant to the aggravating circumstances the offender was found guilty of committing. Because findings of guilt are only made as to the specifications contained in the indictment, it is clear that the reference in these provisions to "aggravating circumstances the offender was found guilty of committing" means the R.C. 2929.04(A) specifications set forth in the indictment and at issue in each case. The jury is thus required to "consider" "other evidence" relevant to those specifications, including evidence relevant to the nature and circumstances of those specifications.

{¶ 25} Gumm asserts before this court that despite this clear mandate to "consider" all the evidence (including nature and circumstances evidence) in determining whether to recommend a death sentence, the jury must not "weigh" it against the mitigation evidence, or include nature and circumstances evidence in its balancing process unless that evidence has first been relied upon by the defendant, *i.e.*, is favorable to the defendant. Implicit in the argument is the premise that, while the defendant must be allowed to introduce unlimited mitigation evidence on one side of the balancing scale, the state may place on the other side of the scale the sole fact that the now death-eligible defendant was found guilty of a specification or specifications set forth in R.C. 2929.04(A)(7). Pursuant to this analysis, the state

may not present evidence or make argument to augment the bare fact that the defendant was found guilty of a specification, nor may a prosecutor comment upon the actual facts upon which that finding of guilt was based. We reject this approach, finding it to be impracticable and abstract and lacking in common sense.

{¶ 26} This court had little problem in its early cases in finding that governing Ohio statutes authorize consideration of "the nature and circumstances of the crime" during the penalty phase. See, *e.g.*, *State v. Jenkins* (1984), 15 Ohio St.3d 164, 174, 15 OBR 311, 320, 473 N.E.2d 264, 277-278 ("The system currently in place in Ohio does *require the sentencing authority to focus on the particular nature of the crime* as well as allow the accused to present a broad range of specified and nonspecified factors in mitigation of the imposition of a death sentence."); *State v. Steffen* (1987), 31 Ohio St.3d 111, 116-117, 31 OBR 273, 278, 509 N.E.2d 383, 390 ("R.C. 2929.04[B] provides that the court, in determining whether death is an appropriate penalty, *'shall consider*, and weigh against the aggravating circumstances proved beyond a reasonable doubt, *the nature and circumstances of the offense* ***.' * * * Thus, the court is *required* to review this factor." (Emphasis *sic*.) In *State v. Stumpf* (1987), 32 Ohio St.3d 95, 99, 512 N.E.2d 598, 604, we noted that "[i]n a particular case, the nature and circumstances of the offense may have a mitigating impact, or they may not. *Either way, they must be considered*." (Emphasis added and citation omitted.) We held in that case, as syllabus law, that "[u]nder R.C. 2929.03(F), a trial court or three judge panel may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors," *id.* at paragraph one of the syllabus, noting that "it would be illogical to require a three-judge panel to consider the nature and circumstances of the offense in making its decisions whether the aggravating circumstances were sufficient to outweigh the mitigating factors, yet to forbid that panel from relying upon and citing such nature and circumstances as reasons for its decision." *Id.* at 99, 512 N.E.2d at 604. We

have noted that it is only by considering the nature and circumstances of the offense, as well as the statutory aggravating circumstances, that it is possible "to prevent a rigid and mechanistic sentencing scheme." *State v. Jester* (1987), 32 Ohio St.3d 147, 153, 512 N.E.2d 962, 969. We have recognized that some crimes are by their very nature so "horrendous" or "harrowing" that it would be difficult to imagine factors that might be mitigating. *State v. Morales* (1987), 32 Ohio St. 3d 252, 262, 513 N.E.2d 267, 277; *State v. Steffen*, *supra*, 31 Ohio St.3d at 128, 31 OBR at 288, 509 N.E.2d at 398.

**{¶ 27}** In paragraph one of the syllabus to *State v. DePew* (1988), 38 Ohio St.3d 275, 528 N.E.2d 542, we established that, pursuant to statute, a prosecutor in the penalty stage of a capital proceeding may introduce "'any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing * * *.'" We have repeatedly acknowledged the importance of presenting the jury with a wide range of factual information in the sentencing phase. In *State v. Greer* (1988), 39 Ohio St.3d 236, 253, 530 N.E.2d 382, 402, we characterized the contention that the jury is to be carefully fed only that information which reflects positively upon the capital defendant as "ludicrous." We further recognized that, once lawfully inserted into the sentencing considerations, admissible evidence is subject to fair comment by both parties. *Id.* See, also, *State v. Sowell* (1988), 39 Ohio St.3d 322, 329, 530 N.E.2d 1294, 1303; *State v. Benner* (1988), 40 Ohio St.3d 301, 317, 533 N.E.2d 701, 717; *State v. Landrum* (1990), 53 Ohio St.3d 107, 112-113, 559 N.E.2d 710, 719; *State v. Spirko* (1991), 59 Ohio St.3d 1, 13, 570 N.E.2d 229, 245; *State v. Lorraine* (1993), 66 Ohio St.3d 414, 420, 613 N.E.2d 212, 218.

**{¶ 28}** We believe that a large part of the confusion which has developed in this area is semantical in nature in that the term "aggravating circumstances" has been imprecisely employed to refer not only to the eight enumerated specifications of aggravating circumstances of R.C. 2929.04(A), but also to any evidentiary

factors which tend to increase the likelihood that a death sentence will be imposed. The nature and circumstances of a crime may be "aggravating" in the sense that they are relevant and tend to reinforce the conclusion that a death sentence should be imposed. This does not mean that the facts surrounding a crime can be set forth in the indictment as a specified statutory aggravating circumstance, nor may they be deemed an "aggravating circumstance" in terms of determining death eligibility. *State v. Johnson* (1986), 24 Ohio St.3d 87, 24 OBR 282, 494 N.E.2d 1061. Thus, the fact that a particular murder was, for instance, particularly cruel or heinous is relevant to the determination of the appropriateness of actually imposing a death sentence on a death-eligible perpetrator, even though the fact of cruelty or heinousness would not, of itself, be sufficient to bring the crime within the scope of any section of R.C. 2929.04(A), nor could that fact be used to cause the defendant to become death-eligible. *Maynard v. Cartwright* (1988), 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372. Such an analysis is entirely consistent with the vast weight of established precedent of this court in interpreting Ohio's statutes governing capital punishment, as discussed *supra*, and the United States Supreme Court in interpreting the United States Constitution. *See Barclay v. Florida* (1983), 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (sentencer's consideration of fact that murder included element of racial hatred not improper because relevant to statutorily defined aggravating circumstances, although racial hatred did not itself constitute a statutorily defined aggravating circumstance); *Tuilaepa*, *supra*, at  , 114 S.Ct. at 2640, 129 L.Ed.2d at 766-767 (Stevens, J., concurring, citing *Zant v. Stephens*, *supra*, for the proposition that an incorrect characterization of a relevant factor as an aggravating factor does not prejudice a capital defendant, and noting that "references to such potentially ambiguous, but clearly relevant, factors [as the age of the defendant or the circumstances of the crime] actually reduces [*sic*] the risk of arbitrary capital sentencing."). See, generally, Annotation, Validity of Death Penalty, Under Federal Constitution, as Affected by Consideration of Aggravating

or Mitigating Circumstances—Supreme Court Cases (1993), 111 L. Ed. 2d 947, 956 *et seq.*

{¶ 29} We therefore hold, consistent with paragraph one of the syllabus in *DePew*, *supra*, and the language of R.C. 2929.03(D)(1) and (2), that, subject to applicable Rules of Evidence, counsel for the state and for the defendant at the penalty stage of a capital trial may introduce and comment upon (1) any evidence raised at trial that is relevant to the aggravating circumstances specified in the indictment of which the defendant was found guilty, (2) any other testimony or evidence relevant to the nature and circumstances of the aggravating circumstances specified in the indictment of which the defendant was found guilty, (3) evidence rebutting the existence of any statutorily defined or other mitigating factors first asserted by the defendant, (4) the presentence investigation report, where one is requested by the defendant, and (5) the mental examination report, where one is requested by the defendant. Further, counsel for the state may comment upon the defendant's unsworn statement, if any. Such comment does not, in and of itself, constitute impermissible argument or impermissible introduction of nonstatutory aggravating factors into the penalty phase proceedings. To the extent that this evidence brings before a jury "nonstatutory aggravating factors," the introduction of that evidence for consideration by the jury in the penalty phase is specifically authorized by Ohio statute.

{¶ 30} We issue, however, an additional admonition to courts and prosecutors. Our holding in *State v. Davis* (1988), 38 Ohio St.3d 361, 367-373, 528 N.E.2d 925, 931-936, that it is improper to describe nature and circumstances evidence as a statutorily defined aggravating circumstance remains intact. Trial courts should not instruct jurors that "nature and circumstances" evidence is to be "weighed against" mitigating factors, but should continue to describe only the statutorily defined elements specified in the indictment as being the "aggravating circumstances" a jury is to place on one side of the balance, with mitigating factors

placed on the other side. Juries may be instructed, and prosecutors may argue, that juries may "consider" the factors set forth in R.C. 2929.03(D)(1) in making their recommendation. Both courts and prosecutors should, however, refrain from advising juries that the aggravating circumstances placed on one side of the balance include "everything that surrounds this crime," or "all the nature and circumstances of this crime" or any comparable phraseology. Both courts and attorneys should do all in their power to minimize jury confusion by avoiding use of the same term ("aggravating circumstances") to describe two very different legal concepts, *i.e.*, facts sufficient to elevate a crime to a death-eligible category, and facts relevant to a determination as to whether a death sentence should be imposed upon a death-eligible capital defendant.

{¶ 31} Applying the foregoing principles to the case at bar, we note that the prosecutor's closing arguments did imprecisely describe the facts surrounding Aaron Raines's murder as "the aggravating circumstances" in the case. Had an objection been lodged to this description, it would properly have been sustained. No objection, however, was made to any portion of the state's summation arguments, and the inaccurate description of "nature and circumstances" evidence as "aggravating circumstances" during argument does not constitute plain error. We find beyond a reasonable doubt that the outcome of the jury's sentencing recommendation would not have been different in the absence of this argument, particularly as the jury was correctly instructed as to what the statutory aggravating circumstances were for weighing purposes. See *State v. Campbell* (1994), 69 Ohio St.3d 38, 41, 630 N.E.2d 339, 345 (The rule of plain error may be invoked only in rare cases where, but for the error, the outcome of the trial clearly would have been otherwise.) Similarly, had objection been made to the prosecutor's invitation to the jury to "imagine" or speculate on aspects of the case not in evidence, *e.g.*, Aaron Raines's final thoughts, a trial court might well in its discretion have sustained that objection. *State v. Lott* (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293, 300

(prosecutors "may not allude to matters not supported by admissible evidence"). However, the prosecutor's comments on Aaron's age, size, physical condition, and the defendant's motive were not objectionable, as they constituted comment on the nature and circumstances of the statutory aggravating circumstance of felony-murder as set forth in R.C. 2929.04(A)(7), which the jury was mandated by R.C. 2929.03(D)(1) to consider.

## II

### *Response to Jury Question*

{¶ 32} During its deliberations at the close of the penalty phase, the jury posed the following question to the court:  "Are the aggravating circumstances to Count I just the kidnapping and attempted rape, or do they also include the murder itself?" The jury was called into the courtroom and, after reading the question aloud, the trial court responded as follows:  "The answer to that is Yes.'  Let me read you the instructions on that point.  And if *** you're mixed up on something after I get done re-reading it, it's in your instruction booklet under the heading aggravating circumstances."  The trial court then reread the jury instructions that discussed the statutory aggravating circumstances of the case.  No contemporaneous objection was lodged to this response.  After the jury returned to its deliberations, Gumm's counsel lodged an objection to the court's response, claiming that the court had indicated that the aggravated murder was in and of itself one of the aggravating circumstances to be considered in determining penalty.

{¶ 33} In this case, with regard to Count I, the jury was called upon to determine whether the defendant was guilty of the death specification of felony-murder, R.C. 2929.04(A)(7), which required proof that Gumm was either "*the principal offender in the commission of the aggravated murder* or, if not the principal offender, [that he] *committed the aggravated murder* with prior calculation and design." (Emphasis added.)  We have previously held that proof of guilt of R.C. 2929.04(A)(7) requires proof that the murder was directly "associated

with" the identified underlying felony as "a part of one continuous occurrence." *State v. Rojas* (1992), 64 Ohio St.3d 131, 140, 592 N.E.2d 1376, 1385. Although the murder is an *element* of the felony murder aggravating circumstance defined by R.C. 2929.04(A)(7), it is not, standing alone, an *additional* aggravating circumstance.

{¶ 34} We note that the jury question itself was compound in nature and therefore contained a potential for ambiguity. As a result, the trial court's response ("the answer to that is yes") contained an element of uncertainty as to whether that answer meant, "yes, the aggravating circumstances are just the kidnapping and rape" or "yes, the aggravating circumstances include the murder itself." We note that defense counsel's objection to the court's response was not made at a point in time at which the trial court could easily have corrected the ambiguity inherent in its response, and error, if any, might properly be deemed to have been waived. See *State v. Williams* (1977), 51 Ohio St. 2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus. If, however, an element of uncertainty remained in the minds of the jurors thereafter, the trial court had quite properly instructed them to refer to the written instructions it had provided them for further clarification. Those instructions adequately defined both the statutory aggravating circumstances at issue as well as the process by which the jury was to weigh the aggravating circumstances against any mitigating factors it found. We do not find reversible error in the trial court's response.

III

*Deficiencies of Sentencing Opinion*

{¶ 35} Gumm contends that the trial court's sentencing opinion improperly emphasized facts tending to show that the murder of Aaron Raines contained an element of prior calculation and design and thereby shows inappropriate weighing of nonstatutory aggravating factors. This contention is summarily rejected not only on the basis of our discussion herein of nature and circumstances evidence in capital

cases, but also on precedent established in, *e.g.*, *State v. Johnston* (1988), 39 Ohio St.3d 48, 57, 529 N.E.2d 898, 908; *State v. Landrum*, *supra*, 53 Ohio St.3d at 124, 559 N.E.2d at 729. Additionally, this court's independent review cures any deficiencies of the trial court in failing to conform with the requirements of R.C. 2929.03(F) in its written opinion. *State v. Lott*, *supra*, 51 Ohio St.3d at 171-172, 555 N.E.2d at 305.

IV

*Deficient Jury Instructions*

{¶ 36} Gumm argues that the jury was inadequately instructed in that the court's instructions in the penalty phase failed to instruct the jury that Gumm's mental retardation reduced his moral culpability. Gumm concedes that no objection to the instructions was proffered at the trial court. Error, if any, is thus properly deemed waived. *State v. Adams* (1980), 62 Ohio St.2d 151, 153, 16 O.O.3d 169, 170, 404 N.E.2d 144, 146. See, also, *State v. Hill* (1992), 64 Ohio St.3d 313, 335, 595 N.E.2d 884, 901 (although evidence of mental retardation may be mitigating, death sentence upheld where jury was allowed to consider evidence of low IQ, defendant suffered from no psychoses and could distinguish between right and wrong); *State v. Holloway* (1988), 38 Ohio St.3d 239, 245, 246, 527 N.E.2d 831, 838; *State v. Jenkins*, *supra*, 15 Ohio St.3d at 204-206, 15 OBR at 345-347, 473 N.E.2d at 300-301.

V

*Gruesome Photos*

{¶ 37} Gumm argues that the jury was inflamed by the admission of repetitive, cumulative photographs of the victim and particularly of an enlarged (two feet by three feet) photo of the victim's face which was used by the former deputy coroner during her testimony to explain her autopsy findings as to the extent of Aaron's injuries. Gumm further asserts that he was prejudiced by the admission of the murder weapons.

{¶ 38} Under Evid. R. 403 and 611(A), the admission of photographs is left to the sound discretion of the trial court. *State v. Maurer* (1984), 15 Ohio St.3d 239, 264, 15 OBR 379, 401; 473 N.E.2d 768, 791. Nonrepetitive photographs in capital cases, even if gruesome, are admissible if the probative value of each photograph outweighs the danger of material prejudice to an accused. *Id.*, paragraph seven of the syllabus.

{¶ 39} In determining the admissibility of the photographs offered into evidence by the prosecution, the trial judge carefully reviewed each photo individually and determined the probative value of each one under the *Maurer* standard. We have reviewed each photograph as well and find that each exhibits a wound or murder weapon at the crime scene that is not readily apparent in any other photograph. Thus, the relevancy and probative value of each admitted photo satisfied *Maurer*. Similarly, a videotape showing the defendant "walking through" the crime scene with police and describing the events surrounding the murder was clearly probative and was not gruesome in nature. The trial court did not abuse its discretion in allowing it to be introduced as evidence.

{¶ 40} Two enlarged photographs were used by the deputy coroner to explain and detail the injuries and trauma sustained by the victim in lieu of showing projected slides to the jury. The trial court, in the proper exercise of its discretion, found the photos themselves to be admissible. We do not believe that size alone

increases the prejudicial aspect of the photos to such an extent that they become inadmissible.

{¶ 41} Last, the probative value of the murder weapons found near the body clearly outweighs any material prejudice to Gumm, and the court did not abuse its discretion in admitting them.

VI

*Improper Admission of "Other Acts" Evidence*

{¶ 42} Gumm contends he was denied due process and the right to a fair trial by the admission of evidence of his prior bad acts. Gumm first challenges the admissibility of testimony elicited from witnesses Phyllis Thacker and Charlotte Baker. Specifically, Thacker testified that Gumm "was hateful"; that his personality would change when he drank alcohol; and that Gumm told her that he had once had sexual contact with a horse. Baker testified that Gumm started giving her "strange looks" during the month before the murder and that he had graphically expressed to her his desire to have sex. Gumm asserts that his chance for a fair trial was irretrievably lost after this testimony.

{¶ 43} Evid. R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." R.C. 2945.59 states: "In any criminal case in which the defendant's motive or intent *** or system in doing an act is material, any acts of the defendant which tend to show his motive or intent *** or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." *In State v. Flonnory* (1972), 31 Ohio St.2d 124, 126, 60 O.O.2d 95, 96-97, 285 N.E.2d 726, 729, this court noted that R.C. 2945.59 permits the showing of "other acts" when such other

acts "tend to show" certain things, *e.g.*, motive and intent, as identified in the statute. "If such other acts do in fact 'tend to show' any of those things they are admissible notwithstanding they may not be 'like' or 'similar' to the crime charged." *Id.*

{¶ 44} We note that the prosecution did not revisit these factual disclosures in its summation, nor emphasized them in any way thereafter. Even assuming, *arguendo*, that the challenged evidence should have been deemed inadmissible, we find on the basis of the record as a whole that Gumm received a fair trial and that it is beyond a reasonable doubt that the jury would have both convicted this defendant and sentenced him to death even in the absence of this evidence. See *DePew*, *supra*, 38 Ohio St.3d at 287, 528 N.E.2d at 555.

{¶ 45} Second, Gumm asserts that the state engaged in prosecutorial misconduct in connection with the testimony of defense witness Dr. Henry Leland. Prior to trial Gumm moved the court to provide funds to procure an expert to assist his presentation of mitigation evidence, should he be found guilty. The motion was granted, and Gumm obtained Dr. Leland, a psychologist with expertise in mental retardation. Dr. Leland was called as a defense witness at the guilt phase of Gumm's trial, where he testified that he had interviewed Gumm, reviewed the transcripts of Gumm's statements to police, and reviewed a packet of information supplied to him by Gumm's counsel outlining tests and interviews undertaken and prepared by the Court Psychiatric Center and psychological reports generated while Gumm was a juvenile. In relying on this information and his own testing of Gumm, Dr. Leland concluded that Gumm demonstrated a mild to borderline level of mental retardation and that Gumm did not have the ability to accurately or consistently describe any series of events.

{¶ 46} Thereafter, the prosecutor moved to strike the testimony of defense witness Dr. Henry Leland, unless the packet of materials prepared by the Court Psychiatric Center and relied on by Dr. Leland was admitted into evidence. Gumm argues that admission of the entire packet of materials permitted the prosecution to

engage in further misconduct by allowing it to focus on prior bad acts of defendant (past instances of cruelty to animals and an alleged attempt to rape a friend of his sister).

**{¶ 47}** This claim is without merit. Dr. Leland was called as the sole defense witness to show that Gumm's confession to police was not reliable. In response to the prosecutor's question whether the packet of information helped him form the basis of his opinions on Gumm, Dr. Leland stated that the packet "presented the major basis, because when I was able to compare that information with my information, it became clear what the problem was."

**{¶ 48}** Evid. R. 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." *See State v. Jones* (1984), 9 Ohio St.3d 123, 9 OBR 347, 459 N.E.2d 526, the syllabus of which provides: "Pursuant to Evid. R. 703, facts or data upon which an expert bases an opinion must be those perceived by *him or admitted in evidence at the hearing*." (Emphasis added.)

**{¶ 49}** While Gumm may have been forced to offer the Court Psychiatric Center packet into evidence to save the testimony of his only witness, the motion by the prosecutor does not constitute prosecutorial misconduct. The Rules of Evidence and relevant precedent support the propriety of the prosecution's motion in this regard. Because the prosecutor was permitted to comment upon the evidence admitted at trial, as discussed *supra*, at Part I of this opinion, his reference to materials contained in the packet in his closing argument was permissible.

## VII

### *Failure to Provide Mitigation Specialist*

{¶ 50} In this case the court provided funds for defense counsel to obtain a mitigation psychologist. Gumm now argues, unsuccessfully, that he should instead have been provided with a "mitigation specialist." "An indigent defendant who seeks state funded expert assistance bears the burden of establishing a reasonable necessity for such assistance, and 'undeveloped assertions that the proposed assistance would be useful to the defense are patently inadequate.'" *State v. Sowell* (1991), 73 Ohio App.3d 672, 681, 598 N.E.2d 136, 142, quoting *State v. Scott* (1987), 41 Ohio App.3d 313, 315, 535 N.E.2d 379, 382. We do not believe that the state, having provided a mitigation psychologist, was constitutionally required to provide a "mitigation specialist" instead.

{¶ 51} Gumm's contention that he was precluded from obtaining a "mitigation specialist" as a result of shortness of time, and therefore forced to select Dr. Leland instead, is foreclosed by the fact that Gumm did not seek a continuance for the purpose of obtaining such a specialist in lieu of Dr. Leland. The trial court was under no obligation to grant a continuance sua sponte.

## VIII

### *Effective Assistance of Counsel*

{¶ 52} Reversal of a conviction on the grounds of ineffective assistance requires that defendant show, first, that counsel's performance was deficient, and second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 687. However, each act of counsel with which Gumm finds fault was either not asserted as error in the court of appeals, and thus waived, or may be justified as a strategic decision. Nor has Gumm demonstrated prejudice, *i.e.*, "a reasonable probability that, were it not for counsel's errors, the

result of the trial would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.

{¶ 53} Gumm's claim of ineffective assistance of counsel before the court of appeals should also be rejected. Gumm argues that appellate counsel was ineffective for not raising the issue of ineffective trial counsel based on failure to object to prosecutorial misconduct during trial. However, failure to make objections does not constitute ineffective assistance of counsel *per se*, as that failure may be justified as a tactical decision. Furthermore, appellate counsel need not raise every conceivable issue on appeal. See *Campbell*, *supra*, 69 Ohio St. 3d at 53, 630 N.E.2d at 353. Moreover, the process of "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail *** is the hallmark of effective appellate advocacy." *Smith v. Murray* (1986), 477 U.S. 527, 536 106 Ct. 2661, 2667, 91 L.Ed.2d 434, 441.

IX

*Miranda Issues*

{¶ 54} Gumm contends that the trial court erred in failing to suppress inculpatory statements made to police based on the doctrine of *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Gumm argues that all his statements were made in a custodial context, including those made during his squad car ride back to Cincinnati. Gumm further argues that his statements may not be deemed to have been knowingly, intelligently and voluntarily made in light of the fact that the statements were elicited by seasoned police officers from a youthful, mentally retarded defendant.

{¶ 55} The duty to advise a suspect of *Miranda* rights does not attach until questioning rises to the level of a "custodial interrogation." *State v. Roe* (1989), 41 Ohio St.3d 18, 21, 535 N.E.2d 1351, 1357. In judging whether an individual has been placed into custody the test is whether, under the totality of the circumstances, a "reasonable person would have believed that he was not free to leave." *United*

*States v. Mendenhall* (1980), 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L.Ed.2d 497, 506 (plurality opinion). Accord *Florida v. Bostick* (1991), 501 U.S. 429, 439, 111 S. Ct. 2382, 2389, 115 L.Ed.2d 389, 398.

**{¶ 56}** We need not determine whether Gumm's time in the police car was custodial, in that the state did not proffer into evidence any statements Gumm may have made to police during his ride to Cincinnati.

**{¶ 57}** While at police headquarters, Gumm waived his *Miranda* rights several times and signed two waiver of rights forms. A review of the audio and videotape interviews of Gumm also include waivers of *Miranda* rights, and exhibit no signs of police coercion, threats, mistreatment or physical deprivation. While the state carries the burden of proving the voluntariness of a confession by a preponderance of the evidence, a low mental aptitude of the interrogee is not enough to show evidence of overreaching. *State v. Hill*, *supra*, 64 Ohio St.3d at 318, 595 N.E.2d at 890. See, also, Annotation, Mental Subnormality of Accused as Affecting Voluntariness or Admissibility of Confession (1981), 8 A.L.R. 4th 16. While Gumm alleges that he can neither read nor write, defense witness Dr. Nancy Schmidtgoessling testified at the motion to suppress hearing that she discovered that Gumm could "actually read fairly decently in terms of the rights forms that we went over together. He recognized most of those words, seemed to know what they meant as well, not just recognizing."

**{¶ 58}** In determining the validity of his waivers we look to the totality of the circumstances. *State v. Smith* (1991), 61 Ohio St.3d 284, 288, 574 N.E.2d 510, 515. Under the governing totality of circumstances test the trial court correctly held Gumm's waiver of *Miranda* rights to be voluntary and his subsequent confession to be admissible.

X

*Alleged Violation of Right to Trial by Jury*

**{¶ 59}** Gumm contends that an appellate court's power of independent review of capital sentences under R.C. 2929.05 violates the rights of trial by jury accorded an accused under Sections 5 and 10, Article I of the Ohio Constitution.

**{¶ 60}** The Ohio Constitution states that "[t]he right of a trial by jury shall be inviolate ***." Section 5, Article I. Section 10, Article I provides that "[i]n any trial, in any court, the party accused shall be allowed *** a speedy public trial by an impartial jury ***." However, neither constitutional provision cited by Gumm guarantees the right to be sentenced by a jury nor was sentencing a jury function at common law. We therefore reject Gumm's contention that he was denied his right to a jury trial as guaranteed by the Ohio Constitution.

XI

*Miscellaneous Trial Issues*

**{¶ 61}** Gumm contends that his conviction and death sentence should be deemed void based on what he contends was his illegal arrest in Kentucky and transport to Ohio in the absence of proper extradition procedures. The record, however, supports the sole conclusion that Gumm voluntarily returned to Ohio with Cincinnati police officers. Assuming, *arguendo*, that Gumm was coerced, tricked, induced or deceived into returning to Ohio, such a circumstance would not necessarily invalidate a conviction. *Ker v. Illinois* (1886), 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421; *Frisbie v. Collins* (1952), 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541; *Tomkalski v. Maxwell* (1963), 175 Ohio St. 377, 378-379, 25 O.O.2d 278, 278-279, 194 N.E.2d 845, 846; *State v. Thierbach* (1993), 92 Ohio App.3d 365, 635 N.E.2d 1276. See Annotation, Modern Status of Rule Relating to Jurisdiction of State Court to Try Criminal Defendant Brought Within Jurisdiction Illegally or as Result of Fraud or Mistake (1983), 25 A.L.R. 4th 157 (*Ker-Frisbie* rule

overwhelmingly recognized with possible exception only in cases of outrageous illegal conduct involving kidnapping, torture, or excessive force).

**{¶ 62}** Gumm argues that the trial court erred in refusing to change the venue of his trial in that pretrial publicity in Hamilton County, including publicity concerning the antecedent trial and conviction of Gumm's accused accomplice, Michael Bies, precluded a fair trial in that county.

**{¶ 63}** In reviewing this contention we are guided by established principles that the decision on changing venue rests largely in the discretion of the trial court. *State v. Fox* (1994), 69 Ohio St.3d 183, 189, 631 N.E.2d 124, 129-130. Absent a clear showing of an abuse of discretion, the trial court's decision controls. "[T]he interests of judicial economy, convenience, and reduction of public expenses necessitate that judges make a good faith effort to seat a jury before granting a change in venue." *Id.* at 189, 631 N.E.2d at 130. Further, in Ohio we recognize that the examination of jurors on their voir dire affords the best test as to whether prejudice exists in the community. *Id.* Although a trial court may in its discretion conduct a separate venue hearing prior to jury selection, it is not required to do so. Nor is it necessary to conduct voir dire of prospective jurors individually and out of the hearing of other members of the venire. *State v. Mapes* (1985), 19 Ohio St.3d 108, 19 OBR 318, 484 N.E.2d 140, paragraph three of the syllabus; *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, paragraph two of the syllabus.

**{¶ 64}** The record reflects that jurors seated in this case affirmed that they would judge the defendant solely on the law and evidence presented at trial, despite having been exposed to pretrial publicity. See *State v. Maurer*, *supra*, 15 Ohio St.3d at 252, 15 OBR at 390, 473 N.E.2d at 781; *State v. Spirko*, *supra*, 59 Ohio St.3d at 23, 570 N.E.2d at 253-254. A review of the voir dire proceedings indicates that all jurors who were seated in this case were passed for cause by defense counsel. Gumm has failed to demonstrate that the trial court abused its discretion in refusing to change the venue of his trial.

**{¶ 65}** Gumm contends that the trial court abused its discretion in refusing to allow defense counsel to defer making an opening statement until after the state rested its case. Gumm's argument is defeated by the precedent established in *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249, 357 N.E.2d 1035, paragraph three of the syllabus, where this court held that "[a]ny decision to vary the order of proceedings at trial in R.C. 2945.10 is within the sound discretion of the trial court, and any claim that the trial court erred in following the statutorily mandated order of proceedings must sustain a heavy burden to demonstrate the unfairness and prejudice of following that order." Accord *State v. Jenkins*, *supra*, 15 Ohio St.3d at 215, 15 OBR at 355, 473 N.E.2d at 308; *State v. Grant* (1993), 67 Ohio St. 3d 465, 478, 620 N.E.2d 50, 66. Gumm argues that Ohio law provides such limited discovery rights to criminal defendants that fairness demands that a defendant be accorded the right to defer opening statement until after having heard all of the state's evidence. We reject the argument.

**{¶ 66}** Gumm challenges the trial court's instruction to the jury apprising it that it was called upon to "recommend" a nonbinding sentence of death if it found the aggravating circumstance outweighed the mitigating circumstances. The challenge fails. The argument that such an instruction impermissibly reduces the jury's sense of responsibility in recommending death has been consistently rejected by this court. See, *e.g.*, *State v. Buell* (1986), 22 Ohio St. 3d 124, 142-144, 22 OBR 203, 219-220, 489 N.E.2d 795, 811-813; *State v. Steffen*, *supra*, 31 Ohio St.3d at 114, 31 OBR at 275, 509 N.E.2d at 388; *State v. Grant*, *supra*, 67 Ohio St. 3d at 472, 620 N.E.2d at 61. Similarly, no plain error was committed in providing the jury with a verdict form including the words "we recommend" a sentence of death. *State v. Carter* (1995), 72 Ohio St.3d 545, 559, 651 N.E.2d 956, 977-978. We note that no objection to the verdict forms appears in the record, and failure to so object constitutes a waiver of the right to appeal the issue. *State v. Thompson* (1988), 46 Ohio App.3d 157, 160, 546 N.E.2d 441, 444.

XII

*Constitutionality*

**{¶ 67}** Gumm raises seven claims of unconstitutionality in Ohio's death penalty statutes for purposes of preserving issues for federal review. The constitutional arguments he raises have all have been rejected by this court in numerous cases. See, *e.g.*, *State v. Sowell*, *supra*, 39 Ohio St.3d at 336, 530 N.E.2d at 1309. Accordingly, we reject Gumm's constitutional challenges. *State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568, syllabus.

XIII

*Independent Review and Proportionality Analysis*

**{¶ 68}** At the sentencing hearing, Gumm called one witness, his sister Karen Ridenour, who testified that Gumm's alcoholic mother died when he was an infant and that he was raised by her family. Ridenour described Gumm as "very backwards" in school and related an incident where Gumm was abducted and raped at gunpoint when he was seven years old. Ridenour stated that Gumm could never read or write, and couldn't think for himself. She described several incidents of animal abuse by Gumm after his rape and described those incidents as being "signs that he was calling for help." She testified that her mother and father never attended parenting classes or otherwise tried to resolve Gumm's behavioral problems, and that no one "reached out to help him, period." Gumm was later placed in an orphanage for approximately three years because of his constant truancy. This history and background provide modest mitigating features.

**{¶ 69}** With respect to the relevant statutory mitigating factors of R.C. 2929.04(B) raised by the defense, Gumm's brain dysfunction and mental retardation do not qualify as a mental disease or defect under subsection (3) of the statute. See *State v. Davis* (1992), 63 Ohio St.3d 44, 51, 584 N.E.2d 1192, 1198. Gumm was twenty-six years old at the time of the murder, thus making the factor set forth in subsection (4) inapplicable. However, the factor set forth in subsection (5) is

entitled to some weight. While Gumm was placed in an orphanage as a juvenile because of his truancy, he does not have a significant history of prior criminal convictions.

**{¶ 70}** The factor set forth in subsection (6) of R.C. 2929.04(B) is not applicable to Gumm's case despite his allegations that it was not he, but Bies, who brutalized and killed Aaron Raines. Dr. Martin's testimony and several statements made to police by Gumm contradict his claims that he was a mere "participant" in Aaron's murder, and not a "principal offender."

**{¶ 71}** With respect to the mitigating factor described in subsection (7) of R.C. 2929.04(B), Gumm's retardation and brain dysfunction may be entitled to some weight. However, despite his low IQ, Gumm is able to distinguish right from wrong as noted by Dr. Leland and several court-appointed psychologists who examined him. See *Hill*, *supra*, 64 Ohio St.3d at 335, 595 N.E.2d at 901.

**{¶ 72}** Upon independent weighing, the merged aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. The totality of evidence and circumstances portrays a heinous and brutal crime that shocks the senses. A small ten-year-old boy who was afraid of the dark and who had problems walking was tricked into going into two abandoned buildings to earn some money and to help a family friend. Once inside, Gumm and Bies told Aaron Raines of their true intentions and Aaron resisted. This clearly constituted kidnapping under R.C. 2905.01. Since Aaron refused to give into the sexual desires of his abductors, he was then taken down to the basement and brutally murdered. The jury could have found beyond a reasonable doubt that Gumm was a principal offender in the aggravated murder, since evidence that Aaron lacked defensive wounds supported a finding that two people participated in the actual killing of Aaron Raines. Similarly, the sheer number of blows and weapons used, including evidence of shoe prints on Aaron's chest, which were inconsistent with the shoes worn by Gumm's

accomplice, supports the conclusion that Gumm was an active participant in the murder.

{¶ 73} Imposition of the death penalty in this case is both appropriate and proportionate when compared with similar capital cases where murder was combined with kidnapping or attempted rape.  See, *e.g.*, *State v. Morales*, *supra*, 32 Ohio St.3d 252, 513 N.E.2d 267 (twelve-year-old victim); *Fox*, *supra*, 69 Ohio St.3d 183, 631 N.E.2d 124; *State v. Cooey* (1989), 46 Ohio St.3d 20, 544 N.E.2d 895; and *State v. Spirko*, *supra*, 59 Ohio St.3d 1, 570 N.E.2d 229.

{¶ 74} Accordingly, appellant's convictions and sentences are affirmed.

*Judgment affirmed.*

DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

WRIGHT, J., concurs in judgment only.

_____