[Cite as *State v. Sexton*, 2014-Ohio-3553.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NOS. CA2013-11-088 |
| Plaintiff-Appellee, | : | CA2013-11-089 |
| | | CA2013-11-090 |
| | : | |
| - vs - | | O P I N I O N |
| | : | 8/18/2014 |
| | : | |
| ALEXSIS E. SEXTON, | : | |
| | | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2013 CR 0519


D. Vincent Faris, Clermont County Prosecuting Attorney, Judith A. Brant, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

R. Daniel Hannon, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, Ohio 45103, for defendant-appellant


**PIPER, J.**

{¶ 1} Defendant-appellant, Alexsis Sexton, appeals a decision of the Clermont County Court of Common Pleas, denying her request to receive funding for a psychiatric evaluation to elicit mitigating evidence.

{¶ 2} Sexton has a significant history of abusing children, including bending their fingers back until the point of fracture, pinching them until they bleed, strangling until the child

turns blue, as well as breaking children's bones. On one occasion, Sexton dropped a 13-month-old baby approximately four feet to the ground, then fell on top of the baby with her knee landing on the child's torso. The baby suffered multiple skull fractures, epidural and subdural hematoma, and a lacerated liver. On another occasion, Sexton bent a six-month-old baby's fingers back and fractured them.

{¶ 3} Once Sexton's actions became known to police, multiple parents came forward to report that their children were also harmed while in Sexton's care. Sexton admitted that she harms other people's children, and that she takes pleasure from soothing the children after she injures them. When asked how many children she had harmed during her lifetime, Sexton answered, "too many to count."

{¶ 4} Sexton was charged in three different cases with multiple counts of felonious assault and endangering children. Sexton entered pleas of not guilty by reason of insanity, and moved the court to order a psychiatric examination. The court ordered a Not Guilty by Reason of Insanity (NGRI) evaluation, which was conducted by psychologist Carla Dreyer. Dr. Dreyer concluded that Sexton was not insane within the term's legal significance, and that Sexton did not meet the criteria for a NGRI plea.

{¶ 5} Dr. Dreyer's report contained information regarding Sexton's social history, including that she was sexually abused by her older brother and was possibly physically abused as a child. Dr. Dreyer also noted that Sexton, who had a one-year-old-child at the time of her arrest, suffered postpartum depression after the birth of her child, and was on medication for such depression.

{¶ 6} Once Dr. Dreyer's evaluation was offered to the court, Sexton changed her plea, and pled guilty to three counts of endangering children. Near the end of the plea hearing, Sexton's counsel advised the trial court that Sexton would be moving the court to fund a mitigation evaluation, and such motion was filed. The trial court held a hearing on that

motion, though no transcript of the hearing was filed. The trial court ordered further evaluation of Sexton by Lifepoint Solutions, an agency associated with the Warren County Probation Department.

{¶ 7} Susan Ullman, an experienced social worker with Lifepoint, interviewed Sexton at the request of the trial court. In making her report, Ullman gathered information from Dr. Dreyer's evaluation, police reports, transcripts of telephone calls Sexton made while in jail, as well as interviews with Sexton's probation officer, attorney, and mother. Ullman concluded that Sexton had a major depressive disorder and a moderate to severe antisocial personality disorder. Ullman's report contains information regarding Sexton's social history, and much like Dr. Deyer's report, recounts Sexton's past history of sexual abuse and her issues related to postpartum depression.

{¶ 8} In addition to the reports from Dr. Deyer and Ullman, the trial court also ordered a presentence investigation (PSI) report. The PSI also detailed Sexton's social history and circumstances surrounding Sexton's crimes.

{¶ 9} At the sentencing hearing, Sexton's counsel moved the court once more to appropriate funds for a mitigation evaluation. Sexton's counsel noted that although he had been retained privately by Sexton's family, Sexton was indigent and that the family did not have the funds necessary to pay for an evaluation. The trial court noted that two psychological evaluations had been performed, and that it had the pertinent information to move forward with sentencing. After denying Sexton's request for a third evaluation, the court proceeded to hear mitigating evidence from eight witnesses who appeared on behalf of Sexton, from Sexton herself, as well as Sexton's attorney who argued on her behalf.

{¶ 10} After considering the two evaluations, the PSI, the mitigation witnesses, and the state's arguments, the trial court sentenced Sexton to an aggregate sentence of 15 years. Sexton now appeals her sentence, raising the following assignment of error.

{¶ 11} THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST FOR AN INDEPENDENT MEDICAL EXPERT TO PERFORM A PSYCHIATRIC EVALUATION FOR PURPOSES OF MITIGATION.

{¶ 12} Sexton argues in her assignment of error that the trial court abused its discretion in not ordering an independent psychiatric evaluation specific to the issue of mitigation.

{¶ 13} "In non-capital cases, there is no authority mandating the appointment of an expert for an indigent defendant. The decision of whether to appoint an expert witness at the state's expense lies within the discretion of the trial court." *State v. Higgins*, 12th Dist. Clinton No. CA91-10-023, 1992 WL 107350, *4 (May 18, 1992). To constitute an abuse of discretion, the trial court's decision must be more than a mere error of law or judgment; it must be unreasonable, arbitrary, or unconscionable. *State v. Hopper*, 12th Dist. Warren Nos. CA2013-04-039, CA2013-05-041, 2013-Ohio-5091, ¶ 13.

{¶ 14} Where an indigent defendant seeks an appointment of an expert, the defendant bears the initial burden of establishing the reasonableness of the request. *Id*. "An indigent defendant who seeks state-funded expert assistance bears the burden of establishing a reasonable necessity for such assistance, and undeveloped assertions that the proposed assistance would be useful to the defense are patently inadequate." *State v. Gumm*, 73 Ohio St.3d 413, 427 (1995). One factor to consider when determining if the requested assistance is necessary is whether alternative devices would fulfill the same functions as the expert assistance sought. *State v. Jenkins*, 15 Ohio St.3d 164, 193 (1984).[1]

{¶ 15} Sexton argues that a third evaluation specific to mitigation would have been

---

1. Although the case law regarding when assistance is necessary is specific to rights afforded a capital defendant pursuant to R.C. 2929.024, we find the law helpful in determining whether a mitigation expert was necessary in this case.

reasonably necessary to assist the trial court by offering mitigation evidence. We disagree. The record contains two evaluations, one performed by a psychologist and the other by an experienced social worker, as well as a PSI report. Each of the evaluations and report detail Sexton's troubled past, and offer specific details of the sexual and possible physical abuse she suffered as a child. The evaluations and report discuss Sexton's postpartum depression, and indicate that Sexton takes medication for her depression.

{¶ 16} Sexton asserts that because her mental health issues have been present since she was young, only an expert in mental health could discuss issues of "such complexity." Sexton further argues that Dr. Deyer's evaluation should be discounted because it was prepared for the NGRI designation, rather than mitigation, and that Ullman's evaluation should be discounted because she was "ill equipped" to offer opinions as to Sexton's mental health issues.[2] Again, we disagree. Both evaluations were performed and submitted to the court by experienced personnel, both of whom were able to provide the court with details of Sexton's social history, childhood trauma, and behavior.

{¶ 17} Each of the evaluations and report detailed challenges Sexton faced throughout her youth, including her Mother being married multiple times to abusive husbands, and Sexton moving multiple times between the households of her mother, stepfather, aunt, and natural father. The evaluations and report also detailed Sexton's obsessive compulsive tendencies and paranoia that she was disliked by fellow students or her contemporaries, and that Sexton dropped out of school before obtaining her diploma. The evaluations and report also indicated that Sexton became pregnant at 17 by a 40-year-old man, and that she had

---

2. Sexton especially takes issue with Ullman's report because Ullman makes reference to Sexton being a psychopath with little treatment options available to her at this point in her life. However, the trial court specifically noted during sentencing that there had been "no finding" that Sexton was a psychopath, and there is no indication in the record that the trial court was influenced by Ullman's reference to Sexton's psychopathic behavior.

suffered postpartum depression after she gave birth.

{¶ 18} All of the details regarding Sexton's social history, childhood, education, and employment, as well as details regarding Sexton's mental and physical heath, were included in the evaluations and report, and the trial court had extensive amounts of information on which to base its sentencing determination. Moreover, the court heard from eight witnesses all of whom spoke on behalf of Sexton at the sentencing hearing. These witnesses spoke to Sexton's love for children, her being trusted around some children, and her overall need for help. Sexton also spoke for herself, as did her attorney as to why psychiatric help, rather than a long prison sentence, was warranted.

{¶ 19} After reviewing the record, we find that the trial court did not abuse its discretion by not ordering a third evaluation specific to mitigation. Even absent the mitigation evaluation, the trial court had alternative devices that fulfilled the same function as the expert assistance Sexton sought. The two evaluations, PSI, and mitigation witnesses provided the trial court with all pertinent information necessary for it to make its sentencing decision, and the trial court's decision to not order a specific mitigation evaluation was not arbitrary, unconscionable, or unreasonable. As such, Sexton's assignment of error is overruled.

{¶ 20} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.