DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, the State of Ohio, has appealed from the order of the Lorain County Court of Common Pleas, Juvenile Division, that suppressed statements by Appellee, Andrew Gray. We reverse.
On or about February 20, 2000, a complaint of gross sexual imposition was made against Appellee. On February 23, 2000, Detective Steven Curry conducted an interview with Appellee in Appellee's home regarding the charges. On February 29, 2000, Appellee was charged with gross sexual imposition, in violation of R.C. 2907.05. Subsequently, Appellee moved the court to suppress the statements he made to Detective Curry in the interview that was conducted on February 23. A hearing on the motion was held before a magistrate on August 21, 2000. The magistrate recommended that the statements be suppressed. The State filed timely objections to the magistrate's decision. On October 10, 2000, after reviewing the objections and applicable case law, the trial court suppressed the statements of Appellee. The State timely appealed and has raised two assignments of error for review.
 ASSIGNMENT OF ERROR I The trial court erred in suppressing statements of the alleged delinquent child when the child was not in police custody.
In the State's first assignment of error, the State has argued that the statements of Appellee were improperly suppressed because he was not in custody and thus, the police were not required to read him his Miranda
rights. We agree.
"`When considering a motion to suppress, the trial court assumes the role of trier of fact and thus, stands in the best position to resolve issues of fact and witness credibility.'" State v. Cumberledge (Sept. 16, 1998), Lorain App. No. 97CA006959, unreported, at 5, quoting CuyahogaFalls v. Stephenson (June 18, 1997), Summit App. No. 18011, unreported, at 4. While we defer to the findings of the trial court on a motion to suppress, provided that they are supported by competent, credible evidence, our review of the application of the law to the facts is denovo. State v. McNamara (1997), 124 Ohio App.3d 706, 710.
The duty to advise a suspect of his Miranda rights does not arise until "questioning rises to the level of a `custodial interrogation.'" Statev. Gumm (1995), 73 Ohio St.3d 413, 429, certiorari denied (1996),516 U.S. 1177, 134 L.Ed.2d 221, citing State v. Roe (1989),41 Ohio St.3d 18, 21, certiorari denied (1990), 494 U.S. 1060,108 L.Ed.2d 774. "Custodial interrogation" involves "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."Miranda v. Arizona (1966), 384 U.S. 436, 444, 16 L.Ed.2d 694, 706. Determining whether a suspect is in custody for purposes of Miranda
depends on the circumstances of each case. State v. Warrell (1987),41 Ohio App.3d 286, 287. However, the "ultimate inquiry" is whether there was a "`formal arrest' or `restraint on movement'" to the degree associated with a formal arrest. Id., quoting California v. Beheler
(1983), 463 U.S. 1121, 1125, 77 L.Ed.2d 1275, 1279.
The subjective intent of the law enforcement officer as well as the subjective belief of the defendant have no bearing on the determination of whether a defendant was in custody. Berkemer v. McCarty (1984),468 U.S. 420, 442, 82 L.Ed.2d 317, 336. Rather, the only relevant inquiry is whether, under the totality of the circumstances, a reasonable person in the defendant's position would have believed that he was not free to leave. Id. at 442, 82 L.Ed.2d at 336.
According to the testimony of Detective Curry, he phoned the Appellee and asked if he could come to Appellee's home and speak with him about the complaint. When Detective Curry arrived at Appellee's home he spoke with Appellee's mother. He explained to her that he wanted to speak with Appellee about the investigation. He further told her that it was a non-custodial interview and that no matter how the interview went, he would not arrest Appellee, but rather would make his report and submit it to the court. He then spoke with Appellee. The interview took place at the kitchen table. Detective Curry repeatedly told Appellee that this was a non-custodial interview. Appellee was asked if he understood what "non-custodial" meant and he explained to the officer what that entailed. During the course of the interview Appellee moved about the kitchen assisting his mother with dinner preparations. Appellee was not arrested or taken into custody following the interview. Appellee testified at the hearing that he understood that non-custodial meant that he was free to leave. Appellee further testified that Detective Curry never said that he had to speak with the police about this incident. Appellee's mother testified that she permitted Appellee to be interviewed "[b]ecause I felt like we didn't have anything to hide. I mean, the truth is the truth. It doesn't matter where you tell it at." She further testified that Appellee was never in custody, however, she felt that Appellee had to speak with Detective Curry because he would have eventually had to tell him what had happened.
Appellee has argued that neither he nor his mother felt as if he were free to leave and therefore he was in custody. It also appears that the trial court placed great weight in this belief. However, this subjective belief is irrelevant to the determination as to whether or not Appellee was actually in custody. See Berkemer v. McCarty (1984), 468 U.S. 420,442, 82 L.Ed.2d 317, 336.
Because the trial court appears to have placed great weight on improper evidence, this Court will review the record and the facts as presented at the hearing. After reviewing this evidence and the applicable case law, this Court finds that this was not a custodial interrogation. Detective Curry went to see Appellee as part of an ongoing investigation. Detective Curry requested permission from Appellee's mother to interview Appellee and permission was granted. See State v. Stallings (July 13, 1994), Summit App. No. 16437, unreported, at 3. Appellee was questioned in his home while sitting at his kitchen table. See In re Gunton (Oct. 19, 1994), Wayne App. No. 2890, unreported, at 4. (holding that where a juvenile was questioned in his bedroom by two police officers and a caseworker from the Wayne County Children Services Board, the juvenile's father was home, but was not in the room, and the door was unobstructed, the interview was non-custodial.) Appellee was repeatedly told that the interview was non-custodial and that he would not be arrested that night. See State v. Gump (Jan. 13, 1988), Wayne App. No. 2299, unreported, at 4; State v. Stallings (July 13, 1994), Summit App. No. 16437, unreported, at 3. Finally, Appellee acknowledged that he understood that he was free to go and yet he never asked the Detective to end the interview or sought to terminate the conversation. In fact, Appellee actively participated in the interview by asking Detective Curry questions. See In re Bucy (Nov. 6, 1996), Wayne App. No. 96CA0019, unreported, at 4-5. Following the interview Detective left Appellee's home and Appellee was not arrested until March 13, 2000. Accordingly, it is clear that Appellee was not in custody. Therefore, it was not necessary for Appellee to have been read his Miranda rights and Appellee's statements were improperly suppressed. The State's first assignment of error is sustained.
 ASSIGNMENT OF ERROR II The trial court erred when it required a more stringent standard for the interrogation of juveniles.
In the State's second assignment of error, the State has argued that the trial court erred when it held the interviewer to a heightened standard in light of the fact that Appellee is a juvenile. We agree.
The Supreme Court of Ohio has noted that "the fact that a juvenile is subject to police interrogation does not change the nature of the constitutional rights afforded to him." In re Watson (1989),47 Ohio St.3d 86, 89. In fact, in Watson the Supreme Court specifically rejected a more rigorous standard with respect to juvenile defendants subject to custodial interrogation. Id. Therefore, the trial court erred when it required the interviewer in this case to abide by more stringent criteria than that set forth in the law under State v. Edwards (1976),49 Ohio St.2d 31, paragraph two of the syllabus. Accordingly we sustain the State's second assignment of error.
The State's first and second assignments of error are sustained and the judgment of the trial court is reversed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
 ___________________________ LYNN C. SLABY
WHITMORE, J, CONCURS.
CARR, J., CONCURS IN JUDGMENT ONLY.