OPINION
{¶ 1} Luis M. Macias appeals from his conviction and sentence in the Darke County Common Pleas Court on two counts of aggravated robbery, one count of aggravated burglary, and related firearm specifications.
 {¶ 2} Macias advances seven assignments of error on appeal. First, he challenges the weight and sufficiency of the evidence to support his firearm specification convictions. Second, he argues that the trial court erred by failing to instruct the jury that the firearm specifications were required to be proven beyond a reasonable doubt. Third, he contends that the indictment, jury instructions, and verdict forms were misleading as to one count of the indictment and misstated the elements of another offense. Fourth, he asserts that the trial court erred in overruling his motion for a change of venue. Fifth, he claims that the trial court erred in allowing the State to impeach one of its own witnesses. Sixth, he challenges the weight and sufficiency of the evidence to sustain his convictions for aggravated robbery and aggravated burglary. Seventh, he argues that the cumulative effect of any otherwise harmless errors deprived him of his right to a fair trial.
 {¶ 3} The present appeal stems from events that occurred on April 18, 2001, at a rural residence occupied by 83-year-old Louise Wiley and her 56-year-old son Marvin Wiley. That afternoon, Mr. Wiley noticed a car with several occupants pass the house four or five times. At approximately 8:00 p.m., the car stopped in front of the Wiley residence. A female, later identified as Tracy Slomba, emerged from the car and asked whether someone named Reynolds was there. When Mr. Wiley responded in the negative, Slomba returned to the car and left. Shortly after dark, Mr. Wiley heard a knock on the back door. When Mr. Wiley answered the door, he was pulled outside by his arm and repeatedly struck in the head and face. After he was knocked to the ground, two wallets were stolen from his back pockets and cash was taken from his front pocket. As a result of the darkness, Mr. Wiley was unable to identify the individual or individuals who attacked and robbed him.
 {¶ 4} Meanwhile, Mrs. Wiley was in her bedroom, preparing to go to bed. She had just taken off her glasses and her hearing aid when she turned and saw a man with a handkerchief over his face. The man had what appeared to be a gun in one hand pointed toward her. Mrs. Wiley could not be sure it was a gun, however, because it was partially covered with a handkerchief. She saw only the end of the object, which was round with a hole in it. The man demanded money and struck Mrs. Wiley across the shoulders, knocking her to the floor. He then grabbed her purse and fled the house. Mrs. Wiley subsequently found Mr. Wiley injured in the back yard. She tried to call the police, but discovered that her telephone did not work. She then walked approximately 15 minutes to a neighbor's house for help. Upon arriving at the scene, police discovered that the telephone wires to the house had been cut. Several items stolen from the Wileys were recovered by police along the rural roads near the residence.
 {¶ 5} In the course of their investigation, police received a number of anonymous tips about the crime, some of which indicated that Chris Snyder and Steven Garner had information. Police also had reason to believed that the appellant and his brother, Phillip Macias, may have been involved. During their investigation, police interviewed a number of individuals, including another of the appellant's brothers, Tom Macias, and Tracy Slomba, her daughter, Lindsee Clymer, and her next door neighbor, Sarah Erbaugh.
 {¶ 6} Ultimately, appellant Luis Macias was arrested along with Tracy Slomba, Chris Snyder, Steven Garner, and Phillip Macias. The record reflects that Slomba proceeded to trial and was convicted on one count of robbery, one count of aggravated robbery, and one count of aggravated burglary. She then entered into an agreement with the State to testify against appellant Macias in exchange for a favorable sentencing recommendation. Garner entered a guilty plea to robbery and also agreed to testify against the appellant in exchange for a favorable sentencing recommendation.
 {¶ 7} In April, 2001, appellant Macias was indicted on two counts of aggravated robbery and one count of aggravated burglary. A firearm specification accompanied each charge. The matter proceeded to trial before a jury, which convicted the appellant of all three counts and two of the three firearm specifications.[1] He then filed a timely appeal, advancing the seven assignments of error set forth above.
 {¶ 8} In his first assignment of error, Macias challenges the weight and sufficiency of the evidence to sustain his conviction on the firearm specifications. In particular, he contends the record is devoid of evidence that he or an accomplice possessed a firearm, or that a firearm, even if present, was operable.
 {¶ 9} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law.State v. Hawn (2000), 138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Statev. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 10} The jury in the present case found that the State had proven the firearm specifications accompanying counts two and three of the indictment. Those counts alleged the aggravated robbery of Louise Wiley (count two) and the aggravated burglary of her home (count three).[2]
In his challenge to the sufficiency of the evidence, Macias contends the record is devoid of evidence that either he or an accomplice possessed a firearm.[3] He also insists the State presented no evidence to establish that a firearm, even if present during the commission of the crimes, was operable.
 {¶ 11} With regard to the sufficiency of the evidence, we find Macias' arguments to be unpersuasive. Mrs. Wiley testified that she saw "something that looked like it may have been a gun" in the hand of the masked assailant who entered her bedroom. Trial Transcript at 148. She could not be certain, however, because "it had a handkerchief kind of laid over it, [with] just the end of it sticking out." Id. In any event, the end that Mrs. Wiley saw was round with a hole in it. Id. at 149. Although the assailant made no express threat to shoot her, he pointed the object at her and said, "[W]here's the money?" Id. at 146, 149, 163-164, 166.
 {¶ 12} Co-defendant Tracy Slomba testified that Macias and the others subsequently returned to her apartment after committing the crimes at Mrs. Wiley's residence. Before going to bed that night, she saw a black bag in her bathroom. Id. at 256. It appeared to be a bag that Phillip Macias had taken to the Wiley residence when the crimes were committed. Id. at 257. Inside the bag, Slomba saw what appeared to be an automatic handgun. Id. at 258. Although she did not touch the gun, she testified that it looked real. Id.
 {¶ 13} In our view, the foregoing testimony of Mrs. Wiley and Slomba is legally sufficient to sustain Macias' conviction on the firearm specifications. That testimony, if believed, is certainly sufficient to support a finding that Macias or an accomplice displayed or brandished a firearm to facilitate the aggravated robbery of Mrs. Wiley and the aggravated burglary of her home. Although the operability of the firearm presents a closer question, we believe that the evidence once again is legally sufficient to sustain the jury's verdict on the specifications.
 {¶ 14} "A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52, syllabus paragraph one. In Thompkins, the Ohio Supreme Court found sufficient evidence to sustain a firearm specification conviction where the defendant pointed what appeared to be an automatic handgun at the victim, told her that he was committing a "holdup," and instructed her to be "quick, quick." Even absent any explicit threat to shoot the victim, the Thompkins court reasoned that the foregoing facts were sufficient to support a finding that the defendant possessed an operable firearm at the time of the offense. AsThompkins makes clear, "where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." Id. at 384.
 {¶ 15} In the present case, Tracy Slomba testified that she saw what appeared to be a real handgun in a bag brought back from Mrs. Wiley's residence. Furthermore, Mrs. Wiley testified that her assailant pointed what had the appearance of a real gun at her and demanded her money. Viewed in a light most favorable to the prosecution, the words and actions of the assailant reasonably may be interpreted as an implicit threat that she would be shot if she did not surrender her money. Consequently, the State presented legally sufficient evidence to support a finding that Macias or an accomplice threatened Mrs. Wiley with an operable firearm during the commission of the offenses of aggravated robbery and aggravated burglary.
 {¶ 16} We reach a different conclusion, however, with regard to Macias' argument about the manifest weight of the evidence to support the two firearm specification convictions. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." Thompkins, 78 Ohio St.3d at 386. "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nonetheless conclude that the judgment is against the manifest weight of the evidence." Id. at 387. When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 387. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 17} After reviewing the evidence in the present case, we find that it does weigh heavily against Macias' conviction on the two firearm specifications. Although the implied threat made by Mrs. Wiley's attacker constituted legally sufficient evidence that his gun was operable, the weight of the evidence presented by the State firmly convinces us that it failed to prove operability beyond a reasonable doubt. Notably, Steven Garner and Tracy Slomba both provided testimony suggesting that the firearm at issue was not a real gun. For his part, Garner recalled some talk among his co-defendants about one of them having had a gun on the night in question. Trial Transcript at 206. Although Garner could not recall which member of the group had the gun, he did recall the person telling his companions that "it's fake." Id. Likewise, Slomba testified that she remembered "someone saying something about having a fake gun." Id. at 285. Additionally, she overheard appellant Macias speaking from the rear seat of the car as she and her companions left the crime scene. According to Slomba, Macias said "[s]he thought it was real" or "[w]ow, she thought this was real." Id. at 248-249. Although Slomba did not know whether Macias was referring to a gun, such an inference is entirely reasonable and well supported by the evidence.
 {¶ 18} In light of the foregoing testimony, provided by the State's own witnesses, we believe that the jury clearly lost its way and created a manifest miscarriage of justice when it found that Mrs. Wiley's assailant used an operable gun. The only evidence supporting such a conclusion is the fact that her assailant implicitly threatened her with what appeared to be a real handgun.[4] This evidence must be weighed against Garner's testimony about a "fake" gun being used, Slomba's testimony about someone having a fake gun, and Slomba's testimony about Macias expressing surprise that "she" thought "it" was real. In reviewing the record and weighing this evidence, we are firmly convinced that the evidence weighs heavily against the jury's finding that Macias or an accomplice displayed an operable handgun in the course of committing the crimes at issue. Accordingly, we sustain Macias' first assignment of error, insofar as he argues that his firearm specification convictions are against the manifest weight of the evidence.
 {¶ 19} In his second assignment of error, Macias contends the trial court erred by failing to instruct the jury that the firearm specifications were required to be proven beyond a reasonable doubt. Although the trial court's jury charge did not specifically identify the burden of proof on the firearm specifications, Macias did not object to this omission. Under Ohio law, "a party may not assign as error the giving or the failure to give any instructions unless [he] objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30(A); State v.Stallings, 89 Ohio St.3d 280, 292, 2000-Ohio-164. By failing to object, a defendant waives all but plain error. Id. An error qualifies as plain error only if it is obvious and but for the error the outcome of the trial clearly would have been otherwise. State v. Yarbrough,95 Ohio St.3d 227, 245, 2002-Ohio-2126. The "plain error rule should be applied with utmost caution and should be invoked only to prevent a clear miscarriage of justice." State v. Underwood (1983), 3 Ohio St.3d 12, 14.
 {¶ 20} Upon review, we find no plain error in the trial court's jury charge on the firearm specifications. The record reflects that the trial court properly instructed the jury as to the essential elements of the specifications but neglected to mention that the State was required to prove them beyond a reasonable doubt. See Trial Transcript at 476-477. We note, however, that before discussing the firearm specifications the trial court gave a general instruction regarding the presumption of innocence and the State's obligation to prove guilt beyond a reasonable doubt. Id. at 469. In particular, the trial court informed the jury that "[t]he Defendant must be acquitted unless the State produces evidence which convinces you beyond a reasonable doubt of every essential element of the offenses in the indictment." Id. Given that the trial court gave this correct general charge on the State's burden of proof, we find no plain error in its subsequent failure to repeat the burden of proof when discussing the firearm specifications. Accordingly, we overrule Macias' second assignment of error.
 {¶ 21} In his third assignment of error, Macias contends that the indictment, jury instructions, and verdict forms were misleading as to one count of the indictment and misstated the elements of another count. This assignment of error implicates counts one and two of his indictment. In count one, the State charged Macias with the aggravated robbery of Mr. Wiley in violation of R.C. § 2911.01(A)(1) and (A)(3). Although Macias concedes that he may be indicted under two subsections of a criminal statute, he notes that the verdict forms did not distinguish between subsections (A)(1) and (A)(3). As a result, he suggests that the conviction must be reversed because it is impossible to determine which subsection the jury found to be applicable.
 {¶ 22} With regard to count two, the State charged Macias with the aggravated robbery of Mrs. Wiley in violation of R.C. § 2911.01(A)(1). Although the heading of count two of the indictment only names subsection (A)(1), the body of that count also alleges that Macias inflicted, or attempted to inflict, "physical harm" on Mrs. Wiley. On appeal, Macias notes that an aggravated robbery conviction requires evidence of either a deadly weapon under subsection (A)(1), or "serious physical harm" under subsection (A)(3), in the course of a theft offense. Count two, however, alleged that Macias either displayed a deadly weapon or inflicted physical harm. Macias argues that the omission of the word "serious" rendered count two fatally defective because the infliction of "physical harm," as opposed to "serious physical harm," in the commission of a theft offense constitutes robbery rather than aggravated robbery. Furthermore, Macias notes that the jury instructions repeated this error, creating the possibility that the jury improperly found him guilty of aggravated robbery based on the existence of mere "physical harm" to the victim.
 {¶ 23} Upon review, we note that Macias, by failing to object to the indictment, jury instructions, or verdict forms at trial, has waived all but plain error. With regard to his argument concerning count one, we find no plain error. The aggravated robbery statute, R.C. §2911.01(A)(1) and (A)(3), provides: "(A) No person, in attempting or committing a theft offense * * * shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it" or "(3) Inflict, or attempt to inflict, serious physical harm on another." As set forth above, Macias argues that it is impossible to determine the subsection, (A)(1) or (A)(3), upon which the jury based its verdict. We note, however, that the jury acquitted Macias of the firearm specification accompanying count one. In light of that fact, it is sufficiently evident that the jury did not base its verdict on the existence of a deadly weapon, as required by subsection (A)(1). Rather, it is evident that the jury based its verdict on the existence of serious physical harm to Mr. Wiley, which supports a guilty verdict under subsection (A)(3). Therefore, we find no plain error despite the failure of the verdict forms to distinguish between the subsections of the aggravated robbery statute.
 {¶ 24} Concerning count two of the indictment, we reach a somewhat different conclusion. Count two alleged that Macias, "in attempting or committing a theft offense * * * had, and/or his accomplice had, a deadly weapon on or about his person or under his control, and either displayed the weapon, brandished it, indicated that he possessed it, or used it,and/or did inflict, or attempt to inflict, physical harm on another, towit: Louise Wiley." (Emphasis added). The non-italicized part of the foregoing charge alleges aggravated robbery in violation of R.C. §2911.01(A)(1). The italicized portion does not allege aggravated robbery under R.C. § 2911.01(A)(3) because it does not allege "serious physical harm." As Macias properly notes, the infliction of "physical harm" in the commission of a theft offense constitutes robbery, not aggravated robbery.
 {¶ 25} The record reveals, however, that the omission of the word "serious" from count two may have been intentional. The parties and the trial court were aware of the omission, and they engaged in the following discussion about it after closing arguments:
 {¶ 26} "THE COURT: * * * On Count II as to Louise Wiley, the only way the jury can come back with aggravated robbery is if they also come back with a gun specification. There's no indication to serious physical harm, right?
 {¶ 27} "[Defense Counsel] Lieberman: That's my understanding, yes.
 {¶ 28} "The Court: I think we addressed that matter.
 {¶ 29} "[Prosecutor] Howell: That would be robbery, physical harm.
 {¶ 30} "The Court: Now, the interrogatory on the firearm specification will test the verdict, but I think we did this in the other cases, indicated that had to be their outcome if they weren't consistent. So to that extent, the jury could come back with a verdict that's inconsistent with the verdict on the firearm specification. We can talk about this later, but either Rule 29 or is open or as a matter of law and by agreement there's no way the jury can come back with aggravated robbery without a gun spec.
 {¶ 31} "MR. LIEBERMAN: That would be correct.
 {¶ 32} "THE COURT: Right?
 {¶ 33} "MR. HOWELL: I don't think it's necessary because it's a deadly weapon as opposed to a firearm and firearm requires proof of operability." See Trial Transcript at 466-457.
 {¶ 34} The record suggests that the State intended to charge two offenses in count two: (1) aggravated robbery based on the use of a deadly weapon in the commission of a theft offense; and (2) robbery based on the infliction of physical harm in the commission of a theft offense. This conclusion is supported by the preceding colloquy and by the State's closing argument. When discussing count two, the prosecutor told the jury that a finding of "physical harm" as to Mrs. Wiley would support a conviction on the offense of robbery. Id. at 434-435. The foregoing discussion between the trial court and counsel also shows defense counsel's belief that, despite the somewhat inartful wording of count two, it would be possible to "test" the jury's verdict by reviewing its finding on the firearm specification accompanying count two. If the jury found Macias guilty of the firearm specification, it would be apparent that a deadly weapon was used, and an aggravated robbery conviction would be proper under R.C. § 2911.01(A)(1). On the other hand, if the jury acquitted Macias of the firearm specification, at least defense counsel and the trial court believed only a robbery conviction would be proper, given the indictment's failure to allege serious physical harm.
 {¶ 35} The jury ultimately found Macias guilty of the firearm specification accompanying count two. Therefore, it is evident that the jurors concluded a deadly weapon was used in the theft of Mrs. Wiley's purse. The unanimous verdict on the firearm specification establishes that the jury unanimously and necessarily found Macias guilty of aggravated robbery under R.C. § 2911.01(A)(1) for using a deadly weapon, the firearm, in the commission of a theft offense.[5] As a result, the State's decision to charge aggravated robbery and robbery in the same count did not constitute plain error.[6]
 {¶ 36} Although we reject Macias' argument that the wording of count two constitutes plain error, we still must assess the impact of our finding, supra, that his conviction on the firearm specification was against the manifest weight of the evidence. Absent the firearm specification conviction, we agree with the trial court's belief that his aggravated robbery conviction cannot stand. As explained more fully above, the State alleged the aggravated robbery of Mrs. Wiley based on the use of a deadly weapon, namely the gun brandished by her assailant. In our analysis above, however, we held that the manifest weight of the evidence did not support a finding that the gun was operable. For purposes of Macias' aggravated robbery conviction in count two, the crucial question, then, is whether a "fake" firearm constitutes a deadly weapon. If not, his conviction for the aggravated robbery of Mrs. Wiley under R.C. § 2911.01(A)(1) must be reversed.
 {¶ 37} In State v. Gaines (1989), 46 Ohio St.3d 65, 68, the Ohio Supreme Court recognized that "convictions for aggravated robbery have been upheld even where a toy gun or an inoperable gun was used in the commission of the theft offense since such devices could be used as bludgeons and were therefore `capable of inflicting death[.]'" Although we too have acknowledged that an inoperable gun may be a deadly weapon, this court consistently has required evidence that the defendant actually used or threatened to use it as a bludgeon. See, e.g., State v. Boddie
(Dec. 28, 2001), Montgomery App. No. 18709; State v. Nelson (Aug. 18, 1995), Montgomery App. No. 14775. In Nelson, we observed that "[a]lmost any hard object is capable of being used as a bludgeon." As a result, we concluded that "a blank-firing starting pistol, while capable of inflicting death if used as a bludgeon, is not a deadly weapon unless it is possessed, carried, or used as a bludgeon, and if there is no evidence that it was intended to be used or threatened to be used as a bludgeon, then it is not a deadly weapon." Id. at *3. In the present case, the record is devoid of evidence indicating that Mrs. Wiley's assailant possessed, carried, or used an inoperable gun as a bludgeon. Therefore, we conclude that the "fake" gun used in the present case was not a deadly weapon. As a result, Macias' aggravated robbery conviction under R.C. § 2911.01(A)(1) is against the manifest weight of the evidence.[7]
 {¶ 38} The remaining question is whether Macias may be convicted of simple robbery under count two. As set forth above, in addition to alleging the use of a firearm, count two alleges that Macias inflicted or attempted to inflict physical harm in the commission of a theft offense. This allegation, if proven, would support a conviction for robbery. The problem is that we cannot say, with any certainty, that the jury made such a finding. Count two alleged that Macias, "in attempting or committing a theft offense * * * had, and/or his accomplice had, a deadly weapon on or about his person or under his control, and either displayed the weapon, brandished it, indicated that he possessed it, or used it, and/or did inflict, or attempt to inflict, physical harm on another, to wit: Louise Wiley."
 {¶ 39} In light of the jury's verdict on the firearm specification, it plainly found Macias guilty of displaying or brandishing a deadly weapon in the commission of a theft offense. This finding is against the manifest weight of the evidence, however, and we simply have no way to ascertain whether the jury reached a verdict on the alternative allegation that Macias inflicted or attempted to inflict physical harm during the commission of a theft offense. Notably, count two attempts to set forth the "deadly weapon" and "physical harm" alternatives in both the conjunctive and the disjunctive at the same time. It alleges that Macias had a deadly weapon "and/or" inflicted or attempted to inflict physical harm. If the indictment had used just the word "and," it would be apparent that the jury found the existence of a deadly weapon and physical harm. Under such circumstances, we would be able to say, with certainty, that the jury convicted Macias of both aggravated robbery (deadly weapon) and robbery (physical harm). Absent evidence to support a finding that a deadly weapon was used, we might direct the trial court to enter a robbery conviction. We cannot do so, however, because the indictment includes the disjunctive word "or." Given the presence of this word, the most that can be said, with any certainty, is that the jury found Macias guilty of aggravated robbery (deadly weapon) or robbery (physical harm).[8] Moreover, we know that the jury found Macias guilty of aggravated robbery (deadly weapon) by virtue of its verdict on the firearm specification. Consequently, we do not know, and cannot know, whether the jury found him guilty of robbery (physical harm). No verdict form or interrogatory contains such a finding, and the use of the ambiguous language "and/or" appears to have given the jury the option of finding only the existence of a deadly weapon. In short, absent any basis for determining that the jury also found Macias guilty of inflicting or threatening physical harm in the commission of a theft offense, we cannot sua sponte direct the trial court to enter a conviction on such a charge.
 {¶ 40} In reaching the foregoing conclusion, we have rejected Macias' specific argument that his indictment itself is invalid or fatally defective. In other words, our reversal of his aggravated robbery conviction is not based on the mere fact that the State included two offenses, aggravated robbery and robbery, in one count. As noted above, a defendant's remedy when the State charges two offenses in one count of an indictment is to move for severance of the charges into separate counts or to move for compulsory election by the prosecutor. See, e.g., Statev. Washington (Jan. 10, 1997), Lake App. No. 95-L-128. By failing to do so, a defendant waives any objection to the form of the indictment. Therefore, our reversal of Macias' conviction on count two is not based on the form of that count. Although count two is perhaps inartfully worded, our ruling herein is based on the State's failure to prove the use of a deadly weapon in the theft of Mrs. Wiley's purse, and our inability to conclude, with any certainty, that the jury found Macias guilty of inflicting or threatening physical harm in the theft of the purse.[9] Accordingly, we sustain Macias' third assignment of error, insofar as it relates to count two of his indictment, but for reasons somewhat different than those he advances on appeal.
 {¶ 41} In his fourth assignment of error, Macias asserts that the trial court erred in overruling his motion for a change of venue. In support of his argument that a change of venue was necessary, he contends that "nine potential jurors indicated that they already believed [he was] guilty and one potential juror worked for the Daily Advocate, the local newspaper." Appellant's Brief at 9.
 {¶ 42} Upon review, we find this assignment of error to be without merit. Whether to order a change of venue lies within the sound discretion of the trial court. State v. Gumm, 73 Ohio St.3d 413, 430,1995-Ohio-24. An appellate court will not reverse a trial court's judgment on a change-of-venue motion absent an abuse of discretion. Id.
An abuse of discretion occurs when a trial court acts in a manner that is unreasonable, arbitrary, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 43} The mere existence of extensive pretrial publicity does not require a change of venue. State v. Treesh, 90 Ohio St.3d 460, 463,2001-Ohio-4. A reviewing court must examine a trial court's denial of a request for a change of venue to determine whether a defendant's right to a fair trial was violated. State v. Lundgren, 73 Ohio St.3d 474,1995-Ohio-227. A fair trial merely requires a panel of impartial, indifferent jurors. Id. at 479. "[U]nless a juror is challenged for cause, he or she is presumed to be impartial." State v. Williams,79 Ohio St.3d 1, 4, 1997-Ohio-407. The best test of whether prejudicial pretrial publicity prevented obtaining a fair and impartial jury is a careful and searching voir dire. Treesh, 90 Ohio St.3d at 463-64. When the empaneled jurors have not been exposed to pretrial publicity, have not formed an opinion, or have stated that they could set aside any opinion they had formed, and further when all have stated that they could render a fair and impartial verdict based on the law and the evidence, it is not error to deny a motion for a change of venue. Id. at 464.
 {¶ 44} In the present case, the trial court conducted a voir dire with the active participation of defense counsel before ruling on Macias' motion for a change of venue. During that process, one potential juror indicated that she worked with the classified advertising for theGreenville Daily Advocate. She assured defense counsel, however, that her employment would not influence her verdict. Trial Transcript at 67-68. In addition, nine potential jurors initially admitted to defense counsel that they believed Macias probably was guilty because he was accused of a crime. Id. at 69-70. Defense counsel then explained the operation of the presumption of innocence in a courtroom, and only one potential juror expressed an unwillingness or inability to afford Macias a presumption of innocence. Id. at 71-74. The other potential jurors indicated that they could set aside any preconceived opinions and render a fair and impartial verdict based on the evidence presented in the courtroom. Id. Defense counsel then exercised only two of three allowed peremptory challenges, one of which was used to strike the potential juror who refused to recognize the presumption of innocence. Id. at 95.
 {¶ 45} In light of the foregoing facts, we find no abuse of discretion in the trial court's denial of Macias' motion for a change of venue. The jurors in the present case all expressed a willingness and ability to disregard any preconceptions, to afford Macias a presumption of innocence, and to render a verdict based on the law and the evidence. Given defense counsel's failure to exercise his final peremptory challenge, he apparently was convinced of their impartiality and we find nothing in the record to indicate otherwise. As a result, we cannot say that the trial court's refusal to grant a change of venue deprived Macias of a fair trial. Accordingly, we overrule his fourth assignment of error.
 {¶ 46} In his fifth assignment of error, Macias claims that the trial court erred in allowing the State to impeach one of its own witnesses. More specifically, he argues that the trial court improperly relied on Evid.R. 801(D)(1)(b) to allow the State to impeach the trial testimony of Steven Garner. Macias contends that Rule 801(D)(1)(b) allows the use of a prior consistent statement to rebut a charge of recent fabrication, but does not allow the use of a prior inconsistent statement to impeach a party's own witness.
 {¶ 47} Although we agree with Macias' statement of the law, we find this assignment of error to be without merit. The record reflects that Garner first testified on direct examination that he did not see Macias enter the Wiley house. In response, the State impeached Garner's testimony under Evid.R. 607(a) by questioning him about prior inconsistent statements that he had made in the trials of two co-defendants. Trial Transcript at 187-189. On cross examination, defense counsel then suggested that Garner had testified falsely on direct examination, implicating Macias in the crimes at issue only to satisfy a plea agreement with the State. Id. at 193-195, 210. On re-direct examination, however, the State produced the transcript of a statement Garner had given to police shortly after his arrest. In that statement, which Garner made prior to entering into any plea agreement, he implicated Macias in the crimes at issue. Id. at 213-216. Contrary to Macias' argument on appeal, the foregoing events demonstrate that defense counsel did suggest Garner's trial testimony was a recent fabrication. As a result, the trial court properly invoked Evid.R. 801(D)(1)(b) because the State used Garner's prior consistent police statement to rebut the charge of recent fabrication. Accordingly, we overrule Macias' fifth assignment of error.
 {¶ 48} In his sixth assignment of error, Macias challenges the weight and sufficiency of the evidence to sustain his convictions for aggravated robbery and aggravated burglary in counts one, two, and three. In support, he argues that even if he was present at the Wiley residence on the night in question, the record is devoid of evidence that he participated in the crimes that were committed.
 {¶ 49} Upon review, we find the foregoing argument to be unpersuasive. Macias has not challenged the fact that the State tried him as a complicitor, which means that he could be convicted of aggravated robbery and aggravated burglary if he aided or abetted in those crimes. See, e.g., Trial Transcript at 475. With regard to count one (aggravated robbery of Mr. Wiley) and count three (aggravated burglary of the Wiley residence), the record contains sufficient evidence to support such a finding. Additionally, we conclude that Macias' convictions on count one and count three are not against the manifest weight of the evidence.
 {¶ 50} The record contains substantial evidence to support the foregoing convictions. In particular, Steven Garner testified that he heard Chris Snyder, Phillip Macias, Tracy Slomba, and appellant Luis Macias discuss the prospect of committing a robbery. Trial Transcript at 173. According to Garner, he and the other four then stopped by appellant Macias' house. Id. at 175. The appellant went inside briefly and then returned to the car. Id. at 175-176. At that point, the group proceeded to the Wiley residence. Id. at 176-177. Once there, Garner saw the appellant go toward the front of the residence. Id. at 177-178. Garner also saw the appellant enter the house, and he recalled the appellant wearing latex gloves and a handkerchief on the night in question. Id. at 185, 192, 206, 218.
 {¶ 51} Additionally, Tracy Slomba testified that she heard Luis Macias and Phillip Macias discuss going to the Wiley residence to take money from Mr. Wiley. Id. at 230. According to Slomba, she then accompanied Luis and Phillip Macias to the Wiley residence. Upon arriving, she went to the door and allegedly asked for someone named "Jeff." Id. She did so as a pretext to determine whether Mr. Wiley still lived there. Id. at 231-232. After Mr. Wiley informed her that no one named "Jeff" lived there, Slomba and the Macias brothers left and went to Phillip Macias' house. Id. at 233. Shortly thereafter, Chris Snyder arrived. Phillip Macias, Luis Macias, and Chris Snyder then decided to return to the Wiley residence to get money. Id. at 234. According to Slomba, she then left with them and picked up Steven Garner. Id. at 236. After doing so, the group stopped briefly at appellant Macias' residence. Once there, appellant Macias went inside for a few minutes and returned with a small case and a handkerchief in his hands. Id. at 237. At some point, Slomba heard appellant Macias say that he had his grandfather's tin snips. Id. at 239. After leaving Luis Macias' house, the group proceeded to the Wiley residence. On the way, Slomba heard the appellant question whether "the old lady had any money." Id. at 240. Upon arriving at Mrs. Wiley's house, Slomba remained in the car while the appellant and the others exited the car. Id. at 243. Slomba then saw a porch light come on, saw someone fall out of the doorway, and heard yelling. Id. Mr. Wiley's own testimony revealed that he had been pulled out of the doorway and severely beaten. Thereafter, appellant Luis Macias returned to the car, along with Phillip Macias, Chris Snyder, and Steven Garner. Id. at 244. At that point, Slomba noticed the appellant was holding a woman's purse. Id. at 246. While driving away from the Wiley residence, she also heard the appellant remark that "she thought it was real." Id. at 249.
 {¶ 52} In our view, the foregoing testimony, if believed, would convince the average mind of the appellant's guilt beyond a reasonable doubt on the charges of aiding and abetting in the aggravated robbery of Mr. Wiley and aiding and abetting in the aggravated burglary of the Wiley residence. In particular, the State's evidence supports a finding in count one that Macias aided or abetted in a theft offense during which serious physical harm was inflicted on Mr. Wiley.[10] The State's evidence also supports a finding in count three that Macias aided or abetted in a trespass in the Wiley residence by force, stealth, or deception, when the Wileys were present, with the purpose to commit a theft offense and while inflicting physical harm[11] on Mr. Wiley.[12]
Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact easily could have found the essential elements of those crimes proven beyond a reasonable doubt. Among other things, the jury reasonably could have found that he entered the Wiley house with the others, participated in a robbery, and used tin snips to cut the telephone line before leaving. Accordingly, his aggravated robbery and aggravated burglary convictions in counts one and three are based on legally sufficient evidence. Likewise, a finding that Macias aided or abetted in the aggravated robbery of Mr. Wiley and the aggravated burglary of the Wiley home is not against the manifest weight of the evidence. After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering witness credibility, we cannot say that, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that his conviction on count one must be reversed.
 {¶ 53} With regard to count two, we reject Macias' specific argument that the record is devoid of evidence establishing that he aided or abetted in the aggravated robbery of Mrs. Wiley. In reaching this conclusion, we rely on the same evidence cited above in our analysis of the sufficiency and weight of the evidence to sustain his convictions on counts one and three. For the reasons set forth earlier in this opinion, however, we nevertheless agree that his conviction on count two is against the manifest weight of the evidence, as the State failed to prove the use of a deadly weapon in the theft of Mrs. Wiley's purse. In our analysis, supra, we found legally sufficient evidence to support a finding that Macias or an accomplice displayed an operable handgun when taking the purse. The manifest weight of the evidence, however, persuaded us that the gun brandished by Mrs. Wiley's assailant was not operable. As a result, we conclude once again that while Macias' conviction on count two is supported by legally sufficient evidence, it is against the manifest weight of the evidence.
 {¶ 54} Accordingly, we must sustain Macias' sixth assignment of error, insofar as it challenges the weight of the evidence to support his aggravated robbery conviction in count two. Insofar as this assignment of error challenges the sufficiency of the evidence to support his aggravated robbery conviction in count two, it is overruled. This assignment of error also is overruled, insofar as it challenges the weight and sufficiency of the evidence to sustain Macias' aggravated robbery conviction in count one and his aggravated burglary conviction in count three.
 {¶ 55} In his seventh assignment of error, Macias argues that the cumulative effect of any singularly non-prejudicial errors deprived him of his right to a fair trial. Upon review, we find this argument to be unpersuasive. In our analysis above, we concluded that Macias' firearm specification convictions were against the manifest weight of the evidence. We also determined that his aggravated robbery conviction in count two was against the manifest weight of the evidence. As a result, we have found that these convictions must be reversed. We find no other errors, whether viewed singularly or cumulatively, entitling Macias to any additional relief on appeal. Consequently, we overrule his seventh assignment of error.
 {¶ 56} Based on the reasoning and citation of authority set forth above, we hereby reverse the appellant's firearm specification convictions in count two and count three as being against the manifest weight of the evidence. We also reverse his aggravated robbery conviction in count two as being against the manifest weight of the evidence. Given that we have reversed these convictions based on the weight rather than the sufficiency of the evidence, we will remand this cause to the trial court for retrial on those charges.[13]
 {¶ 57} The judgment of the Darke County Court of Common Pleas is hereby affirmed in part and reversed in part, and this cause is remanded for further proceedings consistent with this opinion.
 {¶ 58} Judgment affirmed in part, reversed in part, and cause remanded.
WOLFF, P.J., and GRADY, J. concur.
[1] The jury acquitted Macias of a firearm specification accompanying one of the aggravated robbery charges.
[2] The trial court merged the two firearm specification convictions for purposes of sentencing.
[3] Macias' indictment alleged accomplice liability. As he properly recognizes, an accomplice may be charged with a firearm specification even when another offender had possession and control of the firearm during the commission of a crime. See, e.g., State v. Chapman (1986),21 Ohio St.3d 41.
[4] Although Mrs. Wiley only saw a small part of the object, Slomba testified about seeing what appeared to be real a handgun in a bag later that night. Trial Transcript at 258.
[5] In State v. Williams (May 22, 1998), Montgomery App. No. 16702, we reasoned that "all firearms are deadly weapons, although not all deadly weapons are firearms. The logical corollary following from this definition is that proof showing that a person used a firearm in violation of R.C. 2941.145 will also show use of a deadly weapon under2911.01(A)(1)."
[6] If anything, we would be inclined to find invited error, rather than plain error, given defense counsel's express agreement with the trial court that any uncertainty caused by the wording of count two could be resolved by reviewing the verdict on the accompanying firearm specification. We note too that a defendant's remedy when the State charges two offenses in one count of an indictment is to move for severance of the charges into separate counts or to move for compulsory election by the prosecutor. See, e.g., State v. Washington (Jan. 10, 1997), Lake App. No. 95-L-128. By failing to do so, Macias has waived any objection. Id.
[7] We note, however, that the aggravated robbery conviction is not based on insufficient evidence. As we explained more fully above, the record contains legally sufficient evidence to support a finding that the handgun at issue was operable. Such a conclusion is simply against the manifest weight of the evidence. As a result, the record likewise contains legally sufficient evidence to support a finding that a deadly weapon was used in the theft of Mrs. Wiley's purse. Such a conclusion is simply against the manifest weight of the evidence.
[8] See State v. Lauderdale (Feb. 27, 1990), Montgomery App. No. 11480 (Fain, J., dissenting) (recognizing that "the phrase `and/or', being neither clearly conjunctive nor clearly disjunctive, is simply ambiguous in that respect").
[9] In other words, while Macias' indictment itself is not fatally defective, his conviction for aggravated robbery under R.C. §2911.01(A)(1) is unsupported by the evidence, and it is not apparent that the jury ever addressed the issue of simple robbery.
[10] As noted above, the jury's verdict in count one makes clear that it was based on serious physical harm to Mr. Wiley rather than on the presence of a deadly weapon. Indeed, the jury acquitted Macias of the firearm specification accompanying count one.
[11] Unlike the aggravated robbery statute, which requires a showing of "serious physical harm," the aggravated burglary statute only requires "physical harm." Cf. R.C. § 2911.01(A)(3) and R.C. 2911.11(A)(1).
[12] Although the jury convicted Macias of the firearm specification accompanying count three, we have found that conviction to be against the manifest weight of the evidence. Nevertheless, the jury's verdict on count one, in which it unanimously found serious physical harm to Mr. Wiley, means that the aggravated burglary conviction in count three remains valid. As a result of the verdict on count one, we can conclude, with certainty, that the jury found aggravated burglary based on both of the alternative ways that the offense may be committed. Count three alleged aggravated burglary based on the existence of a deadly weapon and the infliction of physical harm to an occupant of the house. Although we have rejected the deadly weapon finding, the verdict on count one establishes that the jury also found physical harm to Mr. Wiley. Consequently, count three does not present us with a problem like the one we confronted in our analysis of the aggravated robbery conviction on count two, where it was not apparent that the jury made any finding concerning physical harm to Mrs. Wiley.
[13] It is well settled that a reversal based on the weight of the evidence does not bar retrial. State v. Thompkins, 78 Ohio St.3d 380,387, 678 N.E.2d 541, 1997-Ohio-52.