[Cite as *State v. Gibson*, 2018-Ohio-3963.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-T-0030** |
| VERL D. GIBSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2017 CR 00237.

Judgment: Affirmed.

*Dennis Watkins,* Trumbull County Prosecutor; *Diane Barber* and *Ashleigh Musick,* Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Sarah Thomas Kovoor,* Ford, Gold, Kovoor & Simon, Ltd., 8872 East Market Street, Warren, OH 44484 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Verl D. Gibson, appeals from the judgment of the Trumbull County Court of Common Pleas denying his motion to suppress statements he made during an interview with police. At issue is whether appellant was in custody at the commencement of the interview; whether the interviewing detective utilized an impermissible interrogation technique that undermined the effectiveness of the *Miranda* warnings issued; and whether the *Miranda* warnings were sufficient. We affirm.

**{¶2}** On March 31, 2017, Detective James Robbins and Patrolman Shawn Crank, of the Niles Police Department, visited appellant's residence in Cortland, Ohio. Upon answering the door, Det. Robbins asked appellant if he would meet them at the Niles Police Department to discuss certain incidents that had occurred in a home he owned in Niles that was being rented by appellant's son, daughter-in-law, and granddaughter ("E.G."). Appellant agreed and advised the officers he would "be there shortly."

**{¶3}** Appellant drove himself to the Department and, upon arrival, Det. Robbins met him in the lobby. The detective led appellant through two security doors and into an interview room. The room was relatively small with a table and two chairs. The door to the interview room was closed, but remained unlocked throughout the interview. And, at the commencement of the interview, appellant had not been charged with any crime, had not been restrained in any way, and had not been fingerprinted or photographed.

**{¶4}** Det. Robbins obtained basic information from appellant regarding the residence in Niles and then informed appellant that E.G. had made allegations against him. In particular, the detective informed appellant E.G. had stated appellant had engaged in improper sexual contact and/or conduct with the girl for approximately 10 years, from the ages of four through 14. Appellant was advised the door was not locked and he was free to leave. Appellant remained and denied the allegations. Approximately 18 minutes into the interview, appellant told the detective that on an occasion, E.G. grabbed his hand and put it in her pants.

**{¶5}** Det. Robbins stopped the interview and immediately advised appellant of his *Miranda* rights and a form captioned "Your Constitutional Rights – Not Under Arrest."

2

Appellant read the warnings with the detective and initialed after each line, indicating he understood. Appellant also verbally expressed he understood the warnings. The detective continued the interview and appellant ultimately admitted he had his hands in E.G.'s pants on multiple occasions (eight to 10 times) and had digitally penetrated the child. Appellant was then formally arrested.

{¶6} On April 18, 2017, appellant was indicted on the following charges: Count One: Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b) and (B) and R.C. 2971.03(B)(1)(c); Counts Two through Six: Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b) and (B) and R.C. 2971.03(B)(1)(c); and Count Seven: Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(2) and (B). Appellant entered a plea of not guilty.

{¶7} Appellant filed a motion to suppress evidence which, after a hearing, the trial court denied. Appellant subsequently entered a plea of no contest to each count in the indictment. The trial court proceeded directly to sentencing and ordered appellant to serve a mandatory prison term of 25 years to life on each of Counts One through Six and a mandatory three-year term on Count Seven. The sentences were ordered to be served concurrently. Appellant now appeals and assigns three errors for our review. Because the assignments of error are related, we will address them together. They provide:

{¶8} "[1.] The trial court erred in not suppressing statements made by Gibson because Detective Robbins failed to give Gibson *Miranda* warnings before starting the interrogation.

{¶9} "[2.] The trial court erred in not suppressing statements made by Gibson because it was evident that Detective Robbins used the Question-First Interrogation strategy in order to vitiate the effects of giving Gibson *Miranda* warnings.

{¶10} "[3.] The trial court erred in not suppressing statements given by Gibson because the *Miranda* warnings administered by Detective Robbins were not sufficient."

{¶11} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). The trial court's "findings of fact are to be accepted if they are supported by competent, credible evidence," whereas the appellate court is "to independently determine whether [the facts as determined by the trial court] satisfy the applicable legal standard." *State v. Mayl,* 106 Ohio St.3d 207, 2005-Ohio-4629, ¶41; *State v. Yu,* 11th Dist. Geauga Nos. 2014-G-3209 and 2014-G-3210, 2015-Ohio-637, ¶7.

{¶12} Appellant asserts three arguments in support of his position that the trial court erred in failing to suppress his statement to Det. Robbins. First, he asserts he was improperly subjected to a custodial interrogation from the commencement of the interview without *Miranda* warnings. Second, the warnings issued were insufficient. And, finally, he contends the detective employed an illegitimate interview technique to undermine appellant's *Miranda* waiver.

4

{¶13} With respect to the first argument, appellant contends his statement should have been suppressed because, from the moment the interview began, Det. Robbins was conducting a custodial interrogation.

{¶14} "Police are not required to administer *Miranda* warnings to everyone whom they question." (Citation omitted.) *State v. Biros,* 78 Ohio St.3d 426, 440 (1997). Moreover, the requirement of warnings is not imposed "'simply because * * * the questioned person is one whom the police suspect.' " *Id.,* quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, (1977). "Only *custodial* interrogation triggers the need for *Miranda* warnings." (Emphasis sic.) *Id.* "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

{¶15} In order to determine whether an individual is "in custody" for *Miranda* purposes, two points must be considered. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). "[F]irst, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* (footnote omitted). In order for custodial interrogation to occur, there must be "a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983), quoting *Mathiason, supra.* An "objective test" is applied in making this determination. *Thompson, supra.* A "determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored

by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323 (1994).

**{¶16}** In this case, officers requested that appellant speak to them at the department regarding incidents occurring at the Niles residence. He agreed and voluntarily drove himself, met Det. Robbins in the lobby, and accompanied the officer into the interview room. Once in the room, he was advised that the door was unlocked and he was free to leave. At no point was appellant restrained and there was nothing to suggest appellant's freedom of movement was impeded. Further, even though the interview took place at the police department, the detective was the only officer conducting the interview and he was sitting in a chair during the discussion. And, although appellant asserts Det. Robbins was between appellant and the door, the video of the interview indicates appellant had the same access to the door as the detective. Overall, the atmosphere was casual and there was nothing threatening, "police-dominated," or coercive about the environment.

**{¶17}** Moreover, even after Det. Robbins advised appellant of E.G.'s allegations, his questioning was generally conversational. The detective explained his belief that E.G.'s allegations were credible and requested that appellant tell him the truth. After denying the allegations, at approximately 18 minutes into the interview, appellant admitted that, on one occasion, E.G. placed his hand into her pants. The detective stopped the interview immediately, advised appellant he was not under arrest, but explained the necessity of providing *Miranda* warnings. Appellant asserted he understood the warnings and initialized each individual advisement.

**{¶18}** The circumstances leading up to Det. Robbins providing the warnings do not indicate appellant was formally arrested; nor do they suggest appellant's freedom of movement was restrained to the degree associated with a formal arrest. And, furthermore, the detective's express statement that the door was open and appellant could leave if he wished demonstrates a reasonable person would have felt he or she was free to terminate the interview. We therefore conclude appellant was not in custody at the inception of the interview and *Miranda* warnings were unnecessary at that point.

**{¶19}** Appellant next asserts Det. Robbins used an impermissible "question-first" interrogation strategy in order to vitiate the effect of the *Miranda* warnings and, even when he advised appellant, he failed to ensure appellant understood the import of the warnings. Appellant asserts the question-first strategy is designed to sidestep *Miranda* by withholding the warnings until the subject has confessed.

**{¶20}** Preliminarily, prior to being *Mirandized*, appellant was advised of the allegations and denied the same, but eventually stated that E.G. placed his hand into her pants. He stated he immediately pulled his hand away. At this point, Det. Robbins advised him of his rights and advised him he was not under arrest. Appellant's statement was not a confession to E.G.'s allegations that he sexually assaulted her. Although the statement did suggest appellant had some untoward interaction with E.G., the statement did not necessarily constitute an admission or confession to the allegations. As such, it does not represent a question-first scenario.

**{¶21}** After receiving the *Miranda* warnings, appellant stated he understood them and proceeded with the interview. In determining the voluntary nature of a waiver of a criminal suspect's *Miranda* rights, a reviewing court will look at the "totality of the

7

circumstances." *State v. Gumm,* 73 Ohio St.3d 413, 429 (1995). In deciding whether a defendant's statement is voluntary, the trial court should consider factors including, "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." (Citation omitted.) *State v. Worley,* 11th Dist. Trumbull No. 2001-T-0048, 2002-Ohio-4516, ¶161

**{¶22}** There is nothing in the record to support the inference that appellant's waiver of his *Miranda* rights was not voluntary.  He acknowledged he understood the rights and signed the waiver form.  "Evidence of a written waiver form signed by the accused is strong proof that the waiver was valid."  *State v. Dennis*, 79 Ohio St.3d 421, 425 (1997).  "A suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct."  *State v. Otte*, 74 Ohio St.3d 555, 562 (1996).

**{¶23}** Det. Robbins repeatedly advised appellant he did not believe his statement that appellant was essentially a mere bystander to E.G.'s advances; he further exhorted him to tell the truth.  Although these points were reiterated many times, sometimes with a somewhat severe tone, "admonitions to tell the truth directed at a suspect by police officers are not coercive in nature."  *State v. Wiles*, 59 Ohio St.3d 71, 81 (1991).  And, "[a] police officer's assertion to the suspect that he or she is lying or that the suspect would not have another chance to tell his or her side of the story does not automatically render a confession involuntary."  *State v. Western*, 2d Dist. Montgomery No. 26058, 2015-Ohio-627, ¶42.  Under the circumstances, there is no

evidence that Det. Robbins used inherently coercive police tactics. Furthermore, appellant was a mature adult in his 70s; he was responsive to inquiries and lucid throughout; the interview lasted less than two hours; appellant was not threatened or promised anything; and during the interview, appellant was provided two bottles of water demonstrating he suffered no physical deprivation or mistreatment. We therefore conclude appellant's *Miranda* waiver was voluntary and his statements were also voluntary.

**{¶24}** Appellant's assignments of error lack merit.

**{¶25}** For the reasons discussed in this opinion, the judgment of the Trumbull County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J.,

TIMOTHY P. CANNON, J.,

concur.